**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHESTER COUNTY EMPLOYEES' RETIREMENT FUND, Derivatively on Behalf of Nominal Defendant ABBOTT LABORATORIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MILES D. WHITE, DUANE L. BURNHAM, JEFFREY LEIDEN, WILLIAM DEMPSEY, RICHARD A. GONZALEZ, H. LAURANCE FULLER, ROXANNE S. AUSTIN, W. JAMES FARRELL, SAMUEL C. SCOTT, III, GLENN F. TILTON, WILLIAM A. OSBORN, ROBERT J. ALPERN, M.D., K. FRANK AUSTEN, M.D., JACK M. GREENBERG, THOMAS R. HODGSON, DAVID A. JONES, THE RT. HON. LORD DAVID OWEN, ROBERT L. PARKINSON, JR., BOONE POWELL, JR., ADDISON BARRY RAND, W. ANN REYNOLDS, PH.D., ROY S. ROBERTS, WILLIAM D. SMITHBURG, JOHN R. WALTER, WILLIAM L. WEISS, <br><br> Defendants, <br><br> -and- <br><br> ABBOTT LABORATORIES, INC., <br><br> Nominal Defendant. | **Case No. 11-cv-08114** |

*(Caption continued on following page)*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CHESTER COUNTY EMPLOYEES' RETIREMENT FUND'S MOTION TO REASSIGN AND CONSOLIDATE RELATED ACTIONS PURSUANT TO LOCAL RULE 40.4 AND FED. R. CIV. P. 42(a) AND TO APPOINT LEAD PLAINTIFF, LEAD COUNSEL AND LIAISON COUNSEL**

JACKSONVILLE POLICE & FIRE PENSION FUND, derivatively on behalf of ABBOTT LABORATORIES, )
)
)
)

   Plaintiff, )
)

   v. )
) **Case No. 11-cv-08383**

MILES D. WHITE, ROBERT J. ALPERN, M.D., ROXANNE S. AUSTIN, W. JAMES FARRELL, H. LAURANCE FULLER, EDWARD M. LIDDY, PHEBE N. NOVAKOVIE, WILLIAM A. OSBORN, SAMUEL C. SCOTT, III, GLENN F. TILTON, )
)
)
)
)
)
)

   Defendants )
)

   -and- )
)

ABBOTT LABORATORIES, )
)

   Nominal Defendant. )

WARREN PINCHUCK and ROY SAPIR, derivatively on behalf of ABBOTT LABORATORIES, )
)
)
)

   Plaintiffs, )
)

   v. )
) **Case No. 11-cv-08499**

MILES D. WHITE, ROBERT J. ALPERN, ROXANNE S. AUSTIN, W. JAMES FARRELL, H. LAURANCE FULLER, EDWARD M. LIDDY, PHEBE N. NOV AKOVIC, WILLIAM A. OSBORN, SAMUEL C. SCOTT, III, and GLENN F. TILTON, )
)
)
)
)
)

   Defendants, )
)

   -and- )
)

ABBOTT LABORATORIES, )
)

   Nominal Defendant. )

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE<br>EMPLOYEES RETIREMENT SYSTEM,<br>derivatively and on behalf of ABBOTT<br>LABORATORIES,<br><br>        Plaintiff,<br><br>        v.<br><br>MILES D. WHITE, PHEBE N. NOVAKOVIC,<br>ROBERT J. ALPERN, M.D., ROXANNE S.<br>AUSTIN, W. JAMES FARRELL, H.<br>LAURENCE FULLER, EDWARD M. LIDDY,<br>WILLIAM A. OSBORN, SAMUEL C. SCOTT,<br>GLENN F. TILTON, WILLIAM N. DALEY,<br>DAVID A. JONES, JEFFREY M. LEIDEN,<br>BOONE POWELL, JR., W. ANN REYNOLDS,<br>ROY S. ROBERTS, WILLIAM D.<br>SMITHBURG, JOHN R. WALTER,<br>RICHARD A. GONZALEZ, MARY T. SZELA<br>and MICHAEL J. WARMUTH,<br><br>        Defendants,<br><br>        -and-<br><br>ABBOTT LABORATORIES,<br><br>        Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Case No. 11-cv-08631**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 4

III.  ARGUMENT ...................................................................................................... 4

    A.    Reassignment of the *Jacksonville*, *Pinchuck* and *LAMPERS* Actions Is
    Proper Under Local Rule 40.4 ............................................................................ 4

    B.    Consolidation of the Related Shareholder Derivative Actions Is Proper
    Under Federal Rule of Civil Procedure 42(a) .................................................... 7

    C.    The Court Should Appoint Chester County as Lead Plaintiff ............................ 9

        1.    Chester County and Its Counsel Are the Proven Leaders of
        This Litigation ......................................................................................... 9

        2.    Chester County Has Filed High Quality Pleadings Based Upon
        Its Counsel's Extensive Investigation .................................................. 10

        3.    Chester County Is the Most Adequate Plaintiff to Represent Abbott ....... 11

    D.    The Court Should Appoint KTMC as Lead Counsel and Lasky & Rifkind
    as Liaison Counsel ............................................................................................ 12

IV.   CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bender v. Parkes*,
No. 03-2485 (RMC), 2004 U.S. Dist. LEXIS 17090 (D.D.C. Jan. 15, 2004) ..........................2

*DBD Franchising, Inc. v. DeLaurentis*,
No. 09 C 669, 2009 U.S. Dist. LEXIS 52890 (N.D. Ill. June 23, 2009) ..................................6

*Dollens v. Zionts*,
No. 01 C 5921, 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001) ......................2, 3, 7, 9

*Freeman v. Bogusiewicz*,
No. 03 C 2908, 2004 U.S. Dist. LEXIS 15723 (N.D. Ill. Aug. 10, 2004) ................................6

*Global Patent Holdings, LLC v. Green Bay Packers, Inc.*,
No. 00 C 4623, 2008 U.S. Dist. LEXIS 33296 (N.D. Ill. Apr. 23, 2008) .................................4

*Horn v. Raines*,
227 F.R.D. 1 (D.D.C. 2005) ....................................................................................................12

*In re Microstrategy Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) .......................................................................................8

*Midwest Cmty. Council v. Chicago Park Dist.*,
98 F.R.D. 491 (N.D. Ill. 1983) .................................................................................................7

*Millman v. Brinkley*,
No. 1:03-cv-3831, 2004 U.S. Dist. LEXIS 20113 (N.D. Ga. Oct. 1, 2004) .................... passim

*Murry v. America's Mortg. Banc, Inc.*,
No. 03 C 5811, 2004 U.S. Dist. LEXIS 3148 (N.D. Ill. Feb. 27, 2004) ...............................5, 6

*River Vill. West LLC v. Peoples Gas Light & Coke Co.*,
No. 05 C 2103, 2007 U.S. Dist. LEXIS 98507 (N.D. Ill. Feb. 14, 2007) .............................5, 6

*Sweet v. Bermingham*,
65 F.R.D. 551 (S.D.N.Y. 1975) ...........................................................................................2, 12

*Teacher's Ret. Sys. of La. v. Black*,
No. 04 C 834, 2004 U.S. Dist. LEXIS 10259 (N.D. Ill. May 27, 2004) ...............................6, 7

*Weisz v. Calpine Corp.*,
No. 4:02-cv-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) .........................................8

**RULES**

Fed. R. Civ. P. 42(a) ............................................................................................................... 2, 7

Local Rule 40.4(a) ....................................................................................................................5

Local Rule 40.4(b) ....................................................................................................................5

Proposed Lead Plaintiff, Chester County Employees' Retirement Fund ("Plaintiff" or "Chester County"), plaintiff in the above-captioned shareholder derivative action (the "*Chester County* Action") respectfully submits this Memorandum in support of its motion to (i) reassign to the Honorable Virginia M. Kendall ("Judge Kendall") the related pending shareholder derivative actions captioned *Jacksonville Police & Fire Pension Fund v. White*, No. 11-cv-08383 (the "*Jacksonville* Action"), *Pinchuck v. White*, No. 11-cv-08499 (the "*Pinchuck* Action"), and *Louisiana Mun. Police Emp. Ret. Sys. v. White*, No. 11-cv-08631 (the "*LAMPERS* Action") pursuant to Local Rule 40.4 of the Northern District of Illinois; (ii) consolidate the *Chester County*, *Jacksonville*, *Pinchuck* and *LAMPERS* Actions (collectively, the "Related Derivative Actions") pursuant to Fed. R. Civ. P. 42(a); and (iii) appoint Chester County as Lead Plaintiff and its counsel, Kessler Topaz Meltzer & Check, LLP ("KTMC") as Lead Counsel and Lasky & Rifkind, Ltd. ("Lasky & Rifkind") as Liaison Counsel. Plaintiffs in the *Jacksonville* Action and the *Pinchuck* Action and defendants consent to the motion to reassign such actions to Judge Kendall and to consolidate the Related Derivative Actions.

## I.    **INTRODUCTION**

On November 14, 2011, Chester County, a long term shareholder of nominal defendant Abbott Laboratories, Inc. ("Abbott" or the "Company"), commenced the *Chester County* Action on behalf of Abbott seeking redress for the breaches of fiduciary duties, unjust enrichment and other violations of law by certain current and former Abbott directors and officers in connection with the nearly ten year long illegal off-label promotion of the anti-epileptic drug Depakote. The *Chester County* Action was assigned to Judge Kendall. Thereafter, three similar shareholder derivative actions, the *Jacksonville*, *Pinchuck* and *LAMPERS* Actions, were subsequently filed in this Court alleging similar factual allegations and claims as the *Chester County* Action. The *Jacksonville*, *Pinchuck* and *LAMPERS* Actions were assigned to the Honorable Marvin E. Aspen

("Judge Aspen"), the Honorable William J. Hibbler ("Judge Hibbler"), and the Honorable Blanche M. Manning ("Judge Manning"), respectively.

All of the Related Derivative Actions arise out of similar alleged transactions and occurrences and involve similar alleged issues of law and fact. Because the criteria under Local Rule 40.4 are satisfied and the parties in all four actions consent to the reassignment, the Court should grant Chester County's unopposed motion to reassign the *Jacksonville*, *Pinchuck* and *LAMPERS* Actions to Judge Kendall. For the same reasons, consolidation of the Related Derivative Actions is entirely appropriate under Rule 42(a) of the Federal Rules of Civil Procedure, as all four actions involve common questions of law and fact, and the consolidation of these actions will avoid unnecessary costs and delays for all parties. *See* Fed. R. Civ. P. 42(a).

After consolidation of the Related Derivative Actions, this Court should appoint a leadership structure to ensure that the consolidated action is prosecuted efficiently and effectively. "[P]ursuant to Fed. R. Civ. P. 23.1, a plaintiff bringing a derivative shareholder action must be qualified to serve in a fiduciary capacity as a representative of the class of stockholders, whose interest is dependent upon the representative's adequate and fair prosecution of the action." *Bender v. Parkes*, No. 03-2485 (RMC), 2004 U.S. Dist. LEXIS 17090, at *10 (D.D.C. Jan. 15, 2004) (citation omitted). Here, Chester County and its counsel, KTMC, should be appointed as Lead Plaintiff and Lead Counsel as they are best suited to "act[ ] in the stead of the corporation, as a corporate surrogate seeking vindication of a corporate right" based upon the factors that this Court and other courts consider in appointing leadership structures in derivative actions. *Sweet v. Bermingham*, 65 F.R.D. 551, 553 (S.D.N.Y. 1975); *Dollens v. Zionts*, No. 01 C 5921, 2001 U.S. Dist. LEXIS 19966, at *18-21 (N.D. Ill. Dec. 4, 2001) (considering in appointing lead plaintiff and lead counsel, *inter alia*: (1) the quality of the pleadings; (2) the

vigorousness of prosecution of the lawsuits; (3) whether the movant is an institution; and (4) the financial stake in the company); *Millman v. Brinkley*, No. 1:03-cv-3831, 2004 U.S. Dist. LEXIS 20113, at *8-9 (N.D. Ga. Oct. 1, 2004) (relying on *Dollens* and considering whether plaintiff is represented by capable counsel).

Chester County, a sophisticated institutional investor with a significant stake in Abbott, is the prototypical Lead Plaintiff as its principals have vast experience acting in a fiduciary capacity on behalf of its constituents. Chester County and its counsel have been the proven leaders in this litigation by filing a high quality complaint and by taking the lead to streamline and organize the various derivative actions filed on behalf of Abbott, including reaching out to counsel for plaintiffs to discuss a leadership structure and organization of the cases and by reaching out to counsel in the now voluntarily dismissed derivative action to discuss the defects in that complaint. Furthermore, Chester County has filed the instant motion to reassign and consolidate the Related Derivative Actions in order to ensure the efficient and proper adjudication of the claims raised in the Related Derivative Actions. Last, Chester County has selected highly qualified counsel, KTMC, to act as Lead Counsel. As discussed herein, KTMC is uniquely qualified to serve as Lead Counsel as KTMC has substantial experience acting as lead counsel in shareholder derivative actions in state and federal courts across the country. Indeed, KTMC recently secured the largest monetary damages judgment ever issued by the Delaware Chancery Court in a derivative action – *$1.263 billion* – against the nominal defendant corporation's majority shareholder. Furthermore, KTMC has significant experience litigating actions relating to the off-label marketing of pharmaceuticals, the same misconduct at issue in this action. Thus, for the reasons stated herein, this Court should appoint Chester County as Lead Plaintiff and its counsel, KTMC and the Lasky & Rifkind, as Lead and Liaison Counsel, respectively.

## II.     BACKGROUND

Abbott is an Illinois corporation that develops, manufactures and sells pharmaceutical and other health care products.   *See* Chester County's Verified Shareholder Derivative Complaint, ECF No. 1, at ¶ 15.   The *Chester County* Action, brought on behalf of nominal defendant Abbott against certain of its current and former directors and executive officers, alleges that the defendants engaged in a prolonged and widespread scheme to engage in the promotion of the anti-epileptic drug Depakote for numerous off-label uses, including as an illegal chemical restraint for elderly patients suffering from dementia and Alzheimer's disease.  *See id*, at ¶ 1.   Moreover, in connection with the illegal off-label marketing of Depakote, the defendants knowingly caused and/or allowed the Company to violate numerous federal and state laws prohibiting the submission of false claims, resulting in the commencement of civil and criminal actions against the Company by the United States and 24 states.   *Id*.   As a result of the defendants' misconduct, the Company has recently disclosed that it would reserve $1.5 billion to cover the costs and expenses of a tentative settlement of such actions – the third largest pharmaceutical sales and marketing settlement in history.  *Id*.

The *Chester County* Action was filed on or about November 14, 2011 and assigned to Judge Kendall.   Thereafter, the *Jacksonville*, *Pinchuck* and *LAMPERS* Actions were filed in this Court and assigned to Judge Aspen, Judge Hibbler and Judge Manning, respectively.

## III.     ARGUMENT

### A.     Reassignment of the *Jacksonville*, *Pinchuck* and *LAMPERS* Actions Is Proper Under Local Rule 40.4

Local Rule 40.4 provides for the reassignment of related cases, thereby "promot[ing] efficient use of judicial resources by minimizing duplication of effort on cases that have a great deal in common."  *Global Patent Holdings, LLC v. Green Bay Packers, Inc.*, No. 00 C 4623,

2008 U.S. Dist. LEXIS 33296, at *6 (N.D. Ill. Apr. 23, 2008). Reassignment is appropriate where the requirements of Local Rule 40.4(a) and (b) are satisfied. *See River Vill. West LLC v. Peoples Gas Light & Coke Co.*, No. 05 C 2103, 2007 U.S. Dist. LEXIS 98507, at *3 (N.D. Ill. Feb. 14, 2007).

Local Rule 40.4(a) states that civil cases are related where one or more of the following conditions are met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are the same. *See* L.R. 40.4(a). The rule "does not require complete identity of issues in order for cases to be considered related." *Murry v. America's Mortg. Banc, Inc.*, No. 03 C 5811, 2004 U.S. Dist. LEXIS 3148, at *6 (N.D. Ill. Feb. 27, 2004). Local Rule 40.4(b) provides that a related action may be reassigned where each of the following criteria is met: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to substantially delay the proceedings in the earlier case; and (4) the cases are susceptible of disposition in a single proceeding. *See* L.R. 40.4(b).

Here, the requirements of Local Rule 40.4(a) and (b) are easily met. The *Chester County*, *Jacksonville*, *Pinchuck* and *LAMPERS* Actions all allege, among other things, that the defendants wrongfully caused or allowed the Company to engage in the illegal off-label marketing of Depakote. All four actions seek to recover for the Company the amount of damages it sustained as a result of the defendants' alleged misconduct, including the cost of the settlement of the governmental actions. Accordingly, the Related Derivative Actions satisfy the conditions set forth in Local Rule 40.4(a) in that they involve the same property and many of the same issues of

fact and law, and grow out of the same occurrences. Cases are clearly related under Local Rule 40.4(a) where, as here, "any resolution of both disputes will necessarily require a determination of the legality of the same [defendants'] actions…" *Murry*, 2004 U.S. Dist. LEXIS 3148, at *6.

The requirements set forth in Local Rule 40.4(b) are also satisfied. All of the Related Derivative Actions are pending in the Eastern Division of the Northern District of Illinois. Due to the significant similarities between the cases, a substantial saving of judicial time and effort will result from having the same judge preside over the four related cases. *River Vill. West*, 2007 U.S. Dist. LEXIS 98507, at *4 ("[G]iven the similarities among the three cases, it is clear that substantial judicial resources will be saved if the matters are consolidated.").

Furthermore, the *Chester County* Action has not progressed to the point where reassignment of the other Related Derivative Actions would result in substantial delay to the *Chester County* Action, as all four cases have recently been filed. *See, e.g., Teacher's Ret. Sys. of La. v. Black*, No. 04 C 834, 2004 U.S. Dist. LEXIS 10259, at *7-8, (N.D. Ill. May 27, 2004) (reassignment proper where "each of these cases is in its infancy" and thus the court could not "detect any substantial delays that would result from the reassignment"); *DBD Franchising, Inc. v. DeLaurentis*, No. 09 C 669, 2009 U.S. Dist. LEXIS 52890, at *20 (N.D. Ill. June 23, 2009) (Local Rule 40.4(b) is satisfied where "[b]oth cases are fairly recent cases, only having been filed in the last six months," no dispositive rulings have been issued, and because "neither case has progressed past the motion to dismiss stage, 'no discovery has been conducted and little judicial effort has been expended thus far.'").

Moreover, because of the similarities between the Related Derivative Actions, it is also clear that they are susceptible of disposition in a single proceeding. *See Freeman v. Bogusiewicz*, No. 03 C 2908, 2004 U.S. Dist. LEXIS 15723, at *7 (N.D. Ill. Aug. 10, 2004)

("The facts and issues in both cases are similar in nature and can be handled more efficiently in one proceeding. Accordingly, this court finds that the cases are susceptible of disposition in a single proceeding."); *Teacher's Ret. Sys. of La.*, 2004 U.S. Dist. LEXIS 10259, at *8 ("As these three cases are all securities class actions that originate from the same core of facts, it is clear that they are susceptible of disposition in a single proceeding."). Accordingly, because the requirements of Local Rule 40.4 are met, and no party opposes reassignment,[1] the Court should reassign the *Jacksonville*, *Pinchuck* and *LAMPERS* Actions to Judge Kendall in the interest of promoting judicial economy.

### B. Consolidation of the Related Shareholder Derivative Actions Is Proper Under Federal Rule of Civil Procedure 42(a)

Federal Rule of Civil Procedure 42(a) provides that when actions "involve a common question of law or fact," the Court may "join for hearing or trial any or all matters at issue in the actions; consolidate the actions;" and "issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "A court has discretion to consolidate related cases, which involve common questions of fact and law under Fed. R. Civ. P. 42(a), 'under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event.'" *Dollens*, 2001 U.S. Dist. LEXIS 19966, at *6; *Midwest Cmty. Council v. Chicago Park Dist.*, 98 F.R.D. 491, 499 (N.D. Ill. 1983) ("[i]f two cases appear to this court to be of like nature and relative to the same question, if a joint trial of them would avoid unnecessary costs and delay, and it is reasonable to try them together, it is within this Court's discretionary power to order consolidation."). Consolidation of derivative actions is

---

[1] Defendants do not oppose reassignment of the *Jacksonville* Action, the *Pinchuck* Action and the *LAMPERS* Action to Judge Kendall and consolidation of these four related actions. *See* Declaration of Robin Winchester in Support of Plaintiff Chester County Employees' Retirement Fund's Motion to Reassign and Consolidate Related Actions Pursuant to Local Rule 40.4 and Fed. R. Civ. P. 42(a) and to Appoint Lead Plaintiff, Lead Counsel and Liaison Counsel ("Winchester Decl."), ¶ 10.

"particularly appropriate" since "the 'cost of defending [ ] multiple actions may well do serious harm to the very corporation in whose interest they are supposedly brought.'" *Millman*, 2004 U.S. Dist. LEXIS 20113, at *6-7 (internal citation omitted).

Here, consolidation of the Related Derivative Actions is appropriate under Rule 42(a) because each action involves common questions of law and fact, and consolidation would avoid unnecessary costs and delays in adjudicating the Company's right to relief. All four actions seek, among other things, to recover for the Company the amount of damages it sustained as a result of the defendants' alleged misconduct. Given these common questions, the nearly identical nature of the claims at issue, the overlapping areas of discovery the parties will need to undertake, and the plaintiffs' shared interest in adjudicating the Company's right to relief, consolidation of the Related Derivative Actions is entirely appropriate.

Further, while some differences exist among the Related Derivative Actions, with regard to the individually named defendants[2] and the exact claims being pursued by the plaintiffs, these differences should not defeat consolidation, since the central factual allegations underlying each action are the same.[3] *See In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) (noting that, while the actions contained different claims, class periods and parties, "none of these minor differences detract from the overwhelming factual and legal similarities among the cases."); *Weisz v. Calpine Corp.*, No. 4:02-cv-1200, 2002 WL 32818827, at *3 (N.D. Cal.

---

[2] The *Chester County* Action names 25 of Abbott's current and former directors and officers as defendants. The *Jacksonville* and *Pinchuck* Actions each name eight of the same defendants plus two additional defendants. The *LAMPERS* Action names sixteen of the same defendants as the *Chester County* Action, plus five additional defendants.

[3] Each of the Related Derivative Actions alleges diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the basis for this Court's jurisdiction. Neither the plaintiff in the *Jacksonville* Action nor plaintiff Warren Pinchuck ("Pinchuck") in the *Pinchuck* Action are proper plaintiffs as each would destroy diversity jurisdiction. Therefore, in order to avoid any potential argument that this Court's jurisdiction is compromised by administratively consolidating the cases, Chester County, in the alternative, respectfully requests that the Court dismiss the *Jacksonville* Action and plaintiff Pinchuck before consolidating the remaining Related Derivative Actions.

Aug. 19, 2002) (consolidating cases despite "some differences and unique issues" where the underlying factual issues were identical). Thus, consolidation here is entirely appropriate.

### C. The Court Should Appoint Chester County as Lead Plaintiff

When considering the appointment of a lead plaintiff and lead counsel in a shareholder derivative action, courts seek to determine which shareholder(s) and counsel will adequately serve the interests of the derivative plaintiffs and the nominal defendant. *See Dollens*, 2001 U.S. Dist. LEXIS 19966, at *13-21. The factors that courts consider when making a lead plaintiff determination include: (1) the vigorousness of prosecution of the lawsuits, including the priority in instituting the suit; (2) the quality of the plaintiff's pleadings; (3) whether plaintiff is represented by capable counsel; (4) whether the plaintiff is an institutional investor; and (5) the financial stake of the plaintiff. *See Millman*, 2004 U.S. Dist. LEXIS 20113, at *9-11; *Dollens*, 2001 U.S. Dist. LEXIS 19966, at *13-19. None of these factors are dispositive, in and of themselves. Here, based upon an analysis of the aforementioned factors, the Court should appoint Chester County as Lead Plaintiff and its counsel, KTMC, as Lead Counsel and Lasky & Rifkind as Liaison Counsel.

### 1. Chester County and Its Counsel Are the Proven Leaders of This Litigation

Here, Chester County should be appointed Lead Plaintiff, as Chester County, along with its counsel, KTMC, have proven to be "leaders of the litigation" having exhibited that they are best positioned to lead this litigation by vigorously advancing the course of this litigation as much as possible at this stage and having expended significant resources thus far on behalf of the Company. Indeed, Chester County's counsel conducted an investigation of the defendants' wrongdoing which included a detailed factual investigation of defendants' misconduct as well as researching all potential claims and causes of action which could be brought on behalf of Abbott.

Chester County's vigor to prosecute this action is demonstrated by the high quality complaint that it directed its counsel to file which was the first-filed complaint of the Related Derivative Actions.

Furthermore, since the initiation of the *Chester County* Action, Chester County and its counsel have taken the lead to progress and streamline the litigation, including attempting to come to an agreement with the other plaintiffs and their counsel as to an appropriate leadership structure to prosecute the Related Derivative Actions; reaching a tentative agreement with defense counsel regarding the acceptance of service of the *Chester County* Action on behalf of all defendants; and filing the instant motion to ensure that the Related Derivative Actions are prosecuted efficiently and effectively. *See* Winchester Decl. at ¶¶ 10, 12-13. In addition, Chester County's counsel identified deficiencies in an additional similar shareholder derivative action, captioned *Goodman v. White*, No. 11-cv-07940 (the "*Goodman* Action") and reached out to plaintiff's counsel to notify them of such deficiencies. *Id*. at ¶ 11. Specifically, Chester County's counsel brought to the attention of plaintiff's counsel in the *Goodman* Action that the complaint failed to allege the citizenship of the parties and, moreover, did not have diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as the plaintiff and defendants Richard A. Gonzalez, Thomas R. Hodgson, W. Ann Reynolds, John R. Walter and William L. Weiss are all citizens of the State of Florida. *Id*. Thereafter, the *Goodman* Action was voluntarily dismissed. *See Goodman* Action, ECF No. 4. Thus, even at this preliminary stage of the proceedings, Chester County and its counsel have demonstrated that they are the proven leaders.

> **2. Chester County Has Filed High Quality Pleadings Based Upon Its Counsel's Extensive Investigation**

Chester County's complaint is of the highest quality and was filed after its counsel conducted an extensive investigation into the facts and claims alleged in the *Chester County*

Action on behalf of Abbott. The *Chester County* Action asserts detailed factual allegations and causes of action related to defendants' breaches of fiduciary duties, unjust enrichment and other violations of law resulting from their scheme to engage in the off-label promotion of Depakote. Chester County's complaint contains 153 paragraphs consisting of a detailed analysis of the defendants' illicit conduct which has been taking place for more than a decade. The *Chester County* Action asserts a claim against Abbott's current and former directors and officers for breaching their fiduciary duties owed to the Company by engaging in a widespread scheme to promote Depakote for numerous off-label uses, including as an illegal chemical restraint for elderly patients suffering from dementia and Alzheimer's disease, and by knowingly causing and/or allowing the Company to violate numerous federal and state laws prohibiting the submission of false claims. In addition, the *Chester County* Action asserts a claim for unjust enrichment against certain of the Company's executive officers arising from their receipt of inflated compensation based in part on the success of the illegal marketing of Depakote. Chester County's high-quality pleading is consistent with its counsel's expertise in litigating shareholder derivative actions and with its counsel's reputation generally.

### 3. Chester County Is the Most Adequate Plaintiff to Represent Abbott

Chester County is the most adequate Abbott shareholder to prosecute the derivative claims on behalf of Abbott. Chester County is a sophisticated institutional investor with a significant financial stake in Abbott, holding 38,450 shares of Abbott stock. *See* Winchester Decl. at ¶¶ 3. Chester County's status as a sophisticated institutional investor should weigh heavily in the Court's analysis because "an institutional investor acting as a lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors." *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005) (citing S. Rep. No. 104-98 at 690). Furthermore, and importantly, the appointment of

Chester County as Lead Plaintiff will ensure that this Court continues to have jurisdiction over the parties as Chester County meets the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[4] Neither Jacksonville nor Pinchuck, however, will meet the requirements for diversity under 28 U.S.C. § 1332(a)(1) once the actions are consolidated as plaintiffs Jacksonville and Pinchuck, as well as defendants Gonzalez, Hodgson, Reynolds, Walter and Weiss, are all citizens of the State of Florida. Thus, the inclusion of Jacksonville or Pinchuck as a plaintiff in the consolidated action could potentially cause this Court to lose jurisdiction over the consolidated action and would jeopardize the prosecution of the derivative action on behalf of Abbott, the true plaintiff in interest. Therefore, the appointment of Chester County, who is required to "act[ ] in the stead of the corporation, as a corporate surrogate seeking vindication of a corporate right" will ensure that the defendants are held accountable for their misconduct and will not put its own interests before those of the Company. *Sweet*, 65 F.R.D. at 553.

> ### D. The Court Should Appoint KTMC as Lead Counsel and Lasky & Rifkind as Liaison Counsel

The last factor for the Court to consider in the appointment of a lead plaintiff is whether the plaintiffs are represented by capable counsel. Furthermore, in selecting lead counsel, the "guiding principle" is who will "best serve the interest of the plaintiffs." *Millman*, 2004 U.S. Dist. LEXIS 20113, at *9. The criteria for selecting lead counsel include factors such as "experience and prior success record, the number, size, and extent of involvement of represented litigants, the advanced stage of proceedings in a particular suit, and the nature of the causes of action alleged." *Id*. (citations omitted). Each of these factors weighs in favor of appointing KTMC as Lead Counsel and Lasky & Rifkind as Liaison Counsel. As discussed below, KTMC

---

[4] Chester County is a citizen of the Commonwealth of Pennsylvania. *See* Chester County Complaint, ¶ 14. None of the defendants are citizens of Pennsylvania.

is uniquely qualified to serve as Lead Counsel based upon the firm's expertise in not only shareholder derivative actions but also in litigating complex actions relating to the off-label marketing of pharmaceuticals, the same misconduct at issue in this action.

KTMC is a Martindale Hubbell "AV" rated law firm which has focused its practice on shareholder litigation over the past 24 years. *See* Winchester Decl., ¶ 4. With more than 80 attorneys specializing in complex shareholder litigation and with offices in California and Pennsylvania, KTMC has served as Lead or Co-Lead Counsel in numerous securities and complex litigation matters, including serving as Lead or Co-Lead Counsel in hundreds of shareholder derivative actions in state and federal courts across the country. *See* KTMC firm resume, attached to Winchester Decl. as Exhibit A.

Most recently, KTMC exhibited its expertise in derivative litigation by achieving a rare trial victory in a derivative action, securing the largest monetary damages judgment ever issued by the Delaware Chancery Court –*$1.263 billion* – against the nominal defendant corporation's majority shareholder. *In re Southern Peru Copper Corp. S'holder Derivative Litig.*, 2011 WL 4907799 (Del. Ch. Oct. 14, 2011). In *Southern Peru*, KTMC worked through years of discovery on two continents, fought off summary judgment briefing, and pressed through trial to achieve a truly historic result. *See* Winchester Decl. at ¶ 5.

By way of further example of KTMC's commitment to shareholders, its attorneys have always been at the forefront of corporate governance reform, achieving valuable change through derivative litigation and through engagements with companies worldwide. *Id.* at ¶ 6. KTMC strives not only to recoup corporations' financial losses for the benefit of all shareholders, but also to achieve corporate governance changes that will hopefully prevent similar misconduct from recurring, strengthen the company, and make the board of directors a more effective and

responsive representative of shareholders' interests. *See, e.g.*, *Carbon County Emp. Sys. v. Kelly*, Cause No. 08-08692, Final Order and Judgment (Tex Dist. Ct., Dallas Cnty. Dec. 7, 2009) (KTMC was successful in obtaining sweeping internal control and corporate governance reforms both at the board and management levels); *In re Comverse Tech., Inc. Derivative Litig.*, No. 601272106, Order and Final Judgment (E.D.N.Y. July 1, 2010)) (KTMC achieved settlement in which Comverse received financial benefits valued at approximately $60 million plus significant corporate governance reforms); *In re Monster Worldwide, Inc. Stock Option Derivative Litig.*, Index No. 108700/06 (New York Sup. Ct., New York Cnty) (KTMC achieved settlement which required the recipients of backdated stock options to disgorge over $32 million in unlawful gains back to the company plus the implementation of corporate governance reforms).

Furthermore, KTMC has significant experience litigating actions relating to the off-label marketing of pharmaceuticals, the same misconduct at issue in this action. For example, KTMC is currently serving as outside counsel on behalf of the States of Utah and Montana in several actions to recover Medicaid funds allegedly paid as a result of Janssen's and AstraZeneca's off-label promotion of Risperdal and Seroquel, respectively. *See* Winchester Decl. at ¶ 7. In addition, KTMC serves on the lead counsel committee in an action against Cephalon which alleges that the class incurred damages as a result of the company's unlawful off-label promotion, captioned *In Re Actiq Sales & Mktg. Litig.*, No. 07-CV-4492, pending in the United States District Court for the Eastern District of Pennsylvania. *Id*. at ¶ 8.

Finally, KTMC is familiar with litigating actions in this Court. Indeed, KTMC was recently appointed Co-Lead Counsel (and Lasky & Rifkind as Liaison Counsel) in another shareholder derivative action pending in this Court on behalf of Broadwind, Inc. *See Mitchell v. Reiland, et al.*, No. 1:11-cv-01059, Order (N.D. Ill. June 21, 2011). In addition, KTMC was

appointed to serve as Interim Class Counsel (and Lasky & Rifkind as Interim Liaison Class Counsel) in an ERISA class action also pending in this Court. *See In re R.H. Donnelly Corp. ERISA Litig.*, No. 09-cv-7571-RWG, Pretrial Order No. 1 Appointing Interim Class Counsel and Establishing Pretrial Procedures and Preliminary Schedule (N.D. Ill. Mar. 16, 2010).

Lasky & Rifkind, proposed Liaison Counsel, is a unique litigation law firm with offices in New York, New York and Chicago, Illinois. The firm represents both plaintiffs and defendants in complex commercial litigation, securities fraud actions, corporate takeover litigation, general business litigation and arbitrations. The firm's attorneys have successfully tried or prosecuted numerous cases, many resulting in multimillion dollar awards or settlements. *See* Lasky & Rifkind firm resume, attached to Winchester Decl. as Exhibit B.

## IV.    **CONCLUSION**

For the reasons set forth above, the Court should grant Plaintiff's motion and enter an Order: (i) reassigning the *Jacksonville*, the *Pinchuck* and the *LAMPERS* Actions to Judge Kendall; (ii) consolidating the Related Derivative Actions, or, in the alternative, dismissing the Jacksonville Action and plaintiff Pinchuck and consolidating the remaining Related Derivative Actions; (iii) appointing Chester County as Lead Plaintiff; and (iv) appointing the law firm of KTMC as Lead Counsel and the law firm of Lasky & Rifkind as Liaison Counsel.

Dated:  December 13, 2011

**LASKY & RIFKIND, LTD.**
Leigh Lasky
Norman Rifkind
Amelia S. Newton
Heidi VonderHeide

/s/Norman Rifkind
351 W. Hubbard St., Ste 401
Chicago, IL 60610
Tel: (312) 634-0057
Fax: (312) 634-0059

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Eric L. Zagar
Robin M. Winchester
Justin Reliford
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (267) 948-2512

*Counsel for Plaintiff Chester County
Employees' Retirement Fund and Proposed
Lead Counsel*