**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHESTER COUNTY EMPLOYEES' RETIREMENT FUND, Derivatively on Behalf of Nominal Defendant ABBOTT LABORATORIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MILES D. WHITE, DUANE L. BURNHAM, JEFFREY LEIDEN, WILLIAM DEMPSEY, RICHARD A. GONZALEZ,  H. LAURANCE FULLER, ROXANNE S. AUSTIN, W. JAMES FARRELL, SAMUEL C. SCOTT, III, GLENN F. TILTON, WILLIAM A. OSBORN, ROBERT J. ALPERN, M.D., K. FRANK AUSTEN, M.D., JACK M. GREENBERG, THOMAS R. HODGSON, DAVID A. JONES, THE RT. HON. LORD DAVID OWEN, ROBERT L. PARKINSON, JR., BOONE POWELL, JR., ADDISON BARRY RAND, W. ANN REYNOLDS, PH.D., ROY S. ROBERTS, WILLIAM D. SMITHBURG, JOHN R. WALTER, WILLIAM L. WEISS, <br><br> Defendants, <br><br> -and- <br><br> ABBOTT LABORATORIES, INC., <br><br> Nominal Defendant. | Case No. 11-cv-08114 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CHESTER COUNTY EMPLOYEES' RETIREMENT FUND'S MOTION TO APPOINT LEAD PLAINTIFF, LEAD COUNSEL AND LIAISON COUNSEL**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 3

III.  ARGUMENT ......................................................................................................... 4

      A.    The Court Should Appoint Chester County as Lead Plaintiff ................................ 4

           1.    Chester County and Its Counsel Are the Proven Leaders of This Litigation................................................................................................ 4

           2.    Chester County Has Filed High Quality Pleadings Based Upon Its Counsel's Extensive Investigation ............................................................. 6

           3.    Chester County Is the Most Adequate Plaintiff to Represent Abbott ......... 7

      B.    The Court Should Appoint KTMC as Lead Counsel and Lasky & Rifkind as Liaison Counsel ........................................................................................... 9

IV.   CONCLUSION .................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bender v. Parkes*,
   No. 03-2485 (RMC), 2004 U.S. Dist. LEXIS 17090 (D.D.C. Jan. 15, 2004) ..........................2

*Biondi v. Scrushy*,
   820 A.2d 1148 (Del. Ch. 2003)...........................................................................................5

*Cook v. Winfrey*,
   141 F.3d 322 (7th Cir. 1998) ............................................................................................8

*Dollens v. Zionts*,
   No. 01 C 5921, 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001) ...............................2, 4

*Horn v. Raines*,
   227 F.R.D. 1 (D.D.C. 2005)...............................................................................................7

*Kromrey v. U.S. Dep't. of Justice*,
   423 Fed. App'x 624 (7th Cir. May 20, 2011) ...........................................................................8

*Millman v. Brinkley*,
   No. 1:03-cv-3831, 2004 U.S. Dist. LEXIS 20113 (N.D. Ga. Oct. 1, 2004) .....................2, 4, 9

*Sweet v. Bermingham*,
   65 F.R.D. 551 (S.D.N.Y. 1975) .........................................................................................2, 9

Proposed Lead Plaintiff, Chester County Employees' Retirement Fund ("Plaintiff" or "Chester County"), plaintiff in the above-captioned consolidated shareholder derivative action,[1] respectfully submits this Memorandum in support of its motion to appoint Chester County as Lead Plaintiff and appoint its counsel, Kessler Topaz Meltzer & Check, LLP ("KTMC") and Lasky & Rifkind, Ltd. ("Lasky & Rifkind"), as Lead Counsel and Liaison Counsel, respectively.

## I.  INTRODUCTION

On November 14, 2011, Chester County, a long-term shareholder of nominal defendant Abbott Laboratories, Inc. ("Abbott" or the "Company"), commenced the *Chester County* Action on behalf of Abbott seeking redress for the breaches of fiduciary duties, unjust enrichment and other violations of law by certain current and former Abbott directors and officers in connection with a decade-long, illegal off-label promotional and marketing scheme for the Company's anti-epileptic drug Depakote.   Thereafter, four similar shareholder derivative actions – the *Jacksonville* Action, the *Pinchuck* Action, the *LAMPERS* Action, and the *Pipefitters* Action – were subsequently filed in the District Court for the Northern District of Illinois alleging similar factual allegations and claims as the *Chester County* Action.[2]  On December 22, 2011, after hearing argument on certain motions to transfer and consolidate the related derivative actions, this Court ordered the consolidation of the *Jacksonville, Pinchuck, LAMPERS* and *Pipefitters* Actions with the first-filed *Chester County* Action.

---

[1] On December 22, 2011, this Court consolidated four other related derivative actions, *Jacksonville Police & Fire Pension Fund v. White, et al*, No. 11-cv-08383 (the "*Jacksonville* Action"), *Pinchuck, et al. v. White, et al.*, No. 11-cv-08499 (the "*Pinchuck* Action"), *Louisiana Mun. Police Emp. Ret. Sys. v. White, et al.*, No. 11-cv-08631 (the "*LAMPERS* Action"), and *Pipefitters Local Union 537 Pension Fund, et al. v. White, et al.*, No. 11-cv-08886 (the "*Pipefitters* Action"), with the shareholder derivative action filed by Chester County, *Chester Cnty. Emps.' Ret. Fund v. White, et al.*, No. 1:11-cv-08114 (the "*Chester County* Action"). The consolidated derivative actions are referred to herein collectively as the "Consolidated Action."

[2] On January 17, 2012, another similar shareholder derivative action captioned *Public School Ret. Sys. of the School Dist. of Kansas City, Missouri v. White, et al.*, No. 12-cv-00355 (the "*Kansas* Action"), was filed in this Court and assigned to the Honorable Ruben Castillo.  Chester County filed a Motion to Reassign to *Kansas* Action to the Honorable Virginia M. Kendall ("Judge Kendall") to consolidate it with the Consolidated Action.

To maintain the judicial economy served by the consolidation of these actions, this Court also should appoint a leadership structure to ensure that the Consolidated Action is prosecuted efficiently and effectively. "Pursuant to Fed. R. Civ. P. 23.1, a plaintiff bringing a derivative shareholder action must be qualified to serve in a fiduciary capacity as a representative of the class of stockholders, whose interest is dependent upon the representative's adequate and fair prosecution of the action." *Bender v. Parkes*, No. 03-2485 (RMC), 2004 U.S. Dist. LEXIS 17090, at *10 (D.D.C. Jan. 15, 2004) (citation omitted).

Here, Chester County and its counsel, KTMC, should be appointed as Lead Plaintiff and Lead Counsel because they are best suited to "act[ ] in the stead of the corporation, as a corporate surrogate seeking vindication of a corporate right" based upon the factors that this Court and other courts consider in appointing leadership structures in derivative actions. *Sweet v. Bermingham*, 65 F.R.D. 551, 553 (S.D.N.Y. 1975); *Dollens v. Zionts*, No. 01 C 5921, 2001 U.S. Dist. LEXIS 19966, at *18-21 (N.D. Ill. Dec. 4, 2001) (considering in appointing lead plaintiff and lead counsel, *inter alia*: (1) the quality of the pleadings; (2) the vigorousness of prosecution of the lawsuits; (3) whether the movant is an institution; and (4) the financial stake in the company); *Millman v. Brinkley*, No. 1:03-cv-3831, 2004 U.S. Dist. LEXIS 20113, at *8-9 (N.D. Ga. Oct. 1, 2004) (relying on *Dollens* and considering whether plaintiff is represented by capable counsel).

Chester County, a sophisticated institutional investor with a significant stake in Abbott, is the prototypical Lead Plaintiff, as its principals have vast experience acting in a fiduciary capacity on behalf of its constituents. Further, Chester County and its counsel have been the proven leaders in this litigation by filing a high quality complaint before any other current plaintiff and by taking the lead to streamline and organize the various derivative actions filed on

behalf of Abbott, including instituting discussions with counsel for the other derivative plaintiffs to discuss a leadership structure and the organization of the cases. In addition, Chester County has selected highly qualified counsel, KTMC, to act as its counsel in this action. As discussed herein, KTMC is uniquely qualified to serve as Lead Counsel because KTMC has substantial experience acting as lead counsel in shareholder derivative actions in state and federal courts across the country. Indeed, KTMC recently secured the largest monetary damages judgment ever issued by the Delaware Chancery Court in a derivative action – *$1.263 billion* – against the nominal defendant corporation's majority shareholder. Furthermore, KTMC has significant experience litigating actions relating to the off-label marketing of pharmaceuticals, the same misconduct at issue in this action. Thus, for the reasons stated herein, this Court should appoint Chester County as Lead Plaintiff and its counsel, KTMC and Lasky & Rifkind, as Lead and Liaison Counsel, respectively.

## II.   BACKGROUND

Abbott is an Illinois corporation that develops, manufactures and sells pharmaceutical and other health care products. *See* Chester County's Verified Shareholder Derivative Complaint, ECF No. 1, at ¶15. The *Chester County* Action, brought on behalf of nominal defendant Abbott against certain of its current and former directors and executive officers, alleges that the defendants engaged in a prolonged and widespread scheme to engage in the promotion of the anti-epileptic drug Depakote for numerous off-label uses, including as an illegal chemical restraint for elderly patients suffering from dementia and Alzheimer's disease. *See id*, at ¶1. Moreover, in connection with the illegal off-label marketing of Depakote, the defendants knowingly caused and/or allowed the Company to violate numerous federal and state laws prohibiting the submission of false claims to government-sponsored health insurance programs, resulting in the commencement of civil and criminal actions against the Company by the United

States and 24 state governments. *Id.* As a result of the defendants' misconduct, the Company has recently disclosed that it would reserve $1.5 billion to cover the costs and expenses of a tentative settlement of such actions – the third largest pharmaceutical sales and marketing settlement in history. *Id.*

## III.   ARGUMENT

### A.   The Court Should Appoint Chester County as Lead Plaintiff

When considering the appointment of a lead plaintiff and lead counsel in a shareholder derivative action, courts seek to determine which shareholder and counsel will adequately serve the interests of the derivative plaintiffs and the nominal defendant. *See Dollens*, 2001 U.S. Dist. LEXIS 19966, at *13-21. The factors that courts consider when making a lead plaintiff determination include: (1) the vigorousness of prosecution of the lawsuits, including the priority in instituting the suit; (2) the quality of the plaintiff's pleadings; (3) whether the plaintiff is represented by capable counsel; (4) whether the plaintiff is an institutional investor; and (5) the financial stake of the plaintiff. *See Millman*, 2004 U.S. Dist. LEXIS 20113, at *9-11; *Dollens*, 2001 U.S. Dist. LEXIS 19966, at *13-19 (appointing the "leaders of the litigation," based on the quality of their pleadings and the vigor with which they pursued their claims). None of these factors are dispositive, in and of themselves. Here, based upon an analysis of the aforementioned factors, the Court should appoint Chester County as Lead Plaintiff and its counsel as Lead and Liaison Counsel.

#### 1.   Chester County and Its Counsel Are the Proven Leaders of This Litigation

Chester County should be appointed Lead Plaintiff because Chester County, along with its counsel, have proven to be "leaders of the litigation," having vigorously advanced the course of this litigation as much as possible at this stage and having expended significant resources thus

far on behalf of the Company. Indeed, Chester County's counsel conducted a detailed investigation of the defendants' wrongdoing, including an in-depth factual investigation of defendants' misconduct, as well as researching all potential claims and causes of action that could be brought on behalf of Abbott. That investigation remains ongoing. Chester County's vigor to prosecute this action is also demonstrated by the high quality complaint that it directed its counsel to file – the first pleading on file in any of the matters now part of the Consolidated Action. *See Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first when determining leadership structures where "there is a need for an objective tie-breaker").

Furthermore, since the initiation of the *Chester County* Action, Chester County and its counsel have taken the lead to progress and streamline the litigation, including attempting to come to an agreement with the other plaintiffs and their counsel as to an appropriate leadership structure to prosecute the Company's claims; reaching a tentative agreement with defense counsel regarding the acceptance of service of the *Chester County* Action on behalf of all defendants; and filing a motion to consolidate the related derivative actions to ensure the efficient and effective adjudication of the Company's claims. *See* Winchester Decl. at ¶¶10, 12-14.[3] In addition, Chester County's counsel identified deficiencies in an additional similar shareholder derivative action, captioned *Goodman v. White*, No. 11-cv-07940 (the "*Goodman* Action") and reached out to plaintiff's counsel to notify them of such deficiencies. *Id.* at ¶ 11. Specifically, Chester County's counsel brought to the attention of plaintiff's counsel in the *Goodman* Action that the complaint failed to allege the citizenship of the parties and, moreover, did not have diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as the plaintiff and

---

[3] Chester County also filed a Motion to Reassign the *Kansas* Action to Judge Kendall to ensure the efficient prosecution of the Consolidated Action.

defendants Richard A. Gonzalez, Thomas R. Hodgson, W. Ann Reynolds, John R. Walter and William L. Weiss are all citizens of the State of Florida. *Id.* Thereafter, the *Goodman* Action was voluntarily dismissed. *See Goodman* Action, ECF No. 4. Thus, even at this preliminary stage of the proceedings, Chester County and its counsel have demonstrated that they are the proven leaders of this litigation.

### 2. Chester County Has Filed High Quality Pleadings Based Upon Its Counsel's Extensive Investigation

Chester County's complaint is of the highest quality and was filed after its counsel conducted an extensive investigation into the facts and claims raised therein – an investigation that remains ongoing. Indeed, the *Chester County* Action asserts detailed factual allegations and causes of action related to defendants' breaches of fiduciary duties, unjust enrichment and other violations of law in connection with the Company's off-label sales and marketing practices for Depakote. Accordingly, Chester County's complaint contains 153 paragraphs, setting forth a detailed analysis of the defendants' illicit conduct, which spanned more than a decade. Thus, the *Chester County* Action asserts claims against certain former Abbott directors and officers responsible for the Company's unlawful sales and marketing practices. Notably, the *Pinchuck* Action and *Jacksonville* Action fail to name many of the former directors and officers of the Company who engaged in the wrongful conduct at issue, several of whom share the same state of citizenship as the plaintiffs in the *Jacksonville* and *Pinchuck* Actions. In addition, the *Chester County* Action is the only action to assert a claim for unjust enrichment against certain of the Company's executive officers arising from their receipt of inflated compensation based – at least in part – on the success of the illegal marketing of Depakote. Chester County's high-quality pleading is consistent with its counsel's expertise in litigating shareholder derivative actions and prosecuting claims related to the submission of false claims to government-sponsored insurance

programs, as well as its counsel's general reputation as aggressive, ethical and successful advocates in derivative actions.

### 3. Chester County Is the Most Adequate Plaintiff to Represent Abbott

Chester County is the most adequate Abbott shareholder to prosecute the derivative claims on behalf of Abbott, given its status as an institutional investor, its large financial stake in the Company, and the fact that the appointment of Chester County as Lead Plaintiff will allow this Court to continue to maintain jurisdiction over this diversity action.

As mentioned above, Chester County is a sophisticated institutional investor with a significant financial stake in Abbott, holding 38,450 shares of Abbott stock. *See* Winchester Decl. at ¶3. Chester County's status as a sophisticated institutional investor should weigh heavily in the Court's analysis because "an institutional investor acting as a lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors." *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005) (citing S. Rep. No. 104-98 at 690).

In addition, the appointment of Chester County as Lead Plaintiff will ensure that this Court continues to have jurisdiction over this litigation, as Chester County clearly meets the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[4] The plaintiffs in the *Jacksonville*, *Pinchuck* and *Pipefitters* Actions, however, will not meet the requirements for diversity under 28 U.S.C. § 1332(a)(1), since these plaintiffs share the same state of citizenship as certain defendants in the Consolidated Action. More specifically, the Pipefitters plaintiffs and defendant K. Frank Austen ("Austen"), who is named as a defendant in both the *Chester County* Action and the *Pipefitters* Action, are all citizens of Massachusetts. *See Chester County*

---

[4] Chester County is a citizen of the Commonwealth of Pennsylvania. *See* Chester County Complaint, ¶ 14. None of the defendants are citizens of Pennsylvania.

Complaint, at ¶28 (alleging Austen's Massachusetts citizenship); *Pipefitters* Complaint, at ¶22 (failing to allege any citizenship for Austen). Similarly, plaintiff Jacksonville Police and Fire Pension Fund ("Jacksonville") and plaintiff Warren Pinchuck ("Pinchuck") are both citizens of Florida, the same state of citizenship as defendants Richard A. Gonzalez, Thomas R. Hodgson, W. Ann Reynolds, John R. Walter, and William L. Weiss. *See Jacksonville* Complaint, at ¶17; *Pinchuck*, Complaint, at ¶9; *Chester County* Complaint, at ¶¶ 20, 30, 36, 39, and 40.

Notably, the Plaintiffs in the *Pipefitters* Action failed to allege any facts concerning the citizenship of any of the individuals named as defendants in the *Pipefitters* Action, including defendant Austen. *See Pipefitters* Complaint, at ¶¶11-39. Likewise, LAMPERS failed to properly allege the citizenship of all of the parties to the *LAMPERS* Action. *See* LAMPERS Complaint, at ¶23 (failing to specifically allege Abbott's status as a citizen of Illinois) and ¶27 (failing to allege the state of citizenship of Defendant Roxanne S. Austin). Aside from the fact that these defects would have exposed the *Pipefitters* Action and the *LAMPERS* Action to potential dismissal if they were not consolidated with the *Chester County* Action,[5] it should be instructive to this Court's analysis that Chester County is the only plaintiff that has pled sufficient facts for this Court to determine that it can maintain the jurisdiction over this diversity action. *See Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) ("It is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action.").

Accordingly, the appointment of Jacksonville, Pinchuck, or Pipefitters as Lead Plaintiff in the Consolidated Action could potentially cause this Court to lose jurisdiction over this litigation and would jeopardize the prosecution of the derivative action on behalf of Abbott, the

---

[5] *See Kromrey v. U.S. Dep't. of Justice*, 423 Fed. App'x 624, 626 (7th Cir. May 20, 2011) (affirming dismissal of claims where plaintiff failed to allege citizenship of defendant).

true party in interest. Likewise, looking solely at the allegations in LAMPERS' complaint, which fail to allege the citizenship of all of the parties to that action, the Court would be unable to maintain jurisdiction over the LAMPERS Action based on its operative pleading. In short, the appointment of Chester County to "act[ ] in the stead of the corporation, as a corporate surrogate seeking vindication of a corporate right," *Sweet*, 65 F.R.D. at 553, at this juncture, is the only means of ensuring that *all* of the culpable parties are held accountable for their misconduct without the unnecessary and undue delays that would occur if the Court determines that complete diversity does not exist or is inadequately pled.

**B.      The Court Should Appoint KTMC as Lead Counsel and Lasky & Rifkind as Liaison Counsel**

In selecting lead counsel, the "guiding principle" is who will "best serve the interest of the plaintiffs." *Millman*, 2004 U.S. Dist. LEXIS 20113, at *9. The criteria for selecting lead counsel include factors such as "experience and prior success record, the number, size, and extent of involvement of represented litigants, the advanced stage of proceedings in a particular suit, and the nature of the causes of action alleged." *Id.* (citations omitted). Each of these factors weighs in favor of appointing KTMC as Lead Counsel and Lasky & Rifkind as Liaison Counsel. As discussed below, KTMC is uniquely qualified to serve as Lead Counsel based upon the firm's expertise in not only shareholder derivative actions, but also in litigating complex actions related to the off-label marketing of pharmaceuticals, the same misconduct at issue in this action.

KTMC is a Martindale Hubbell "AV" rated law firm which has focused its practice on shareholder litigation over the past 24 years. *See* Winchester Decl., at ¶4. With more than 80 attorneys specializing in complex shareholder litigation and with offices in California and Pennsylvania, KTMC has served as Lead or Co-Lead Counsel in numerous securities and complex litigation matters, including serving as Lead or Co-Lead Counsel in hundreds of

shareholder derivative actions in state and federal courts across the country. *See* KTMC firm resume, attached to Winchester Decl. as Exhibit A.

Most recently, KTMC exhibited its expertise in derivative litigation by achieving a rare trial victory in a derivative action, securing the largest monetary damages judgment ever issued by the Delaware Chancery Court – ***$1.263 billion*** – against the nominal defendant corporation's majority shareholder. *In re Southern Peru Copper Corp. S'holder Derivative Litig.*, 2011 WL 4907799 (Del. Ch. Oct. 14, 2011). In *Southern Peru*, KTMC worked through years of discovery on two continents, fought off summary judgment briefing, and pressed through trial to achieve a truly historic result. *See* Winchester Decl. at ¶5.

By way of further example of KTMC's commitment to shareholders, its attorneys have always been at the forefront of corporate governance reform, achieving valuable change through derivative litigation and through engagements with companies worldwide. *Id.* at ¶6. KTMC strives not only to recoup corporations' financial losses for the benefit of all shareholders, but also to implement corporate governance changes designed to prevent misconduct from recurring, to strengthen the company, and to make corporate boards more effective and responsive representatives of shareholders' interests. *See, e.g.*, *Carbon Cnty. Emp. Sys. v. Kelly*, Cause No. 08-08692, Final Order and Judgment (Tex Dist. Ct., Dallas Cnty. Dec. 7, 2009) (KTMC was successful in obtaining sweeping internal control and corporate governance reforms both at the board and management levels); *In re Comverse Tech., Inc. Derivative Litig.*, No. 601272106, Order and Final Judgment (E.D.N.Y. July 1, 2010)) (KTMC achieved settlement in which Comverse received financial benefits valued at approximately $60 million plus significant corporate governance reforms); *In re Monster Worldwide, Inc. Stock Option Derivative Litig.*, Index No. 108700/06 (New York Sup. Ct., New York Cnty) (KTMC achieved settlement which

required the recipients of backdated stock options to disgorge over $32 million in unlawful gains back to the company plus the implementation of corporate governance reforms). *Id.*

Furthermore, KTMC has significant experience litigating actions relating to the off-label marketing of pharmaceuticals, the same misconduct at issue in this action. For example, KTMC is currently serving as outside counsel on behalf of the States of Utah and Montana in several actions to recover Medicaid funds allegedly paid as a result of Janssen's and AstraZeneca's off-label promotion of Risperdal and Seroquel, respectively.[6] *See id.* at ¶7. In addition, KTMC serves on the lead counsel committee in an action against Cephalon, which alleges class-wide damages as a result of the company's unlawful off-label promotion of its pharmaceutical product Actiq. That case is captioned *In Re Actiq Sales & Mktg. Litig.*, No. 07-CV-4492, and is currently pending in the United States District Court for the Eastern District of Pennsylvania. *Id.*

Finally, KTMC is familiar with litigating actions in this Court. Indeed, KTMC was recently appointed Co-Lead Counsel (and Lasky & Rifkind as Liaison Counsel) in another shareholder derivative action pending in this Court on behalf of Broadwind Energy, Inc. *See Mitchell v. Reiland, et al.*, No. 1:11-cv-01059, Order (N.D. Ill. June 21, 2011). In addition, KTMC was appointed to serve as Interim Class Counsel (and Lasky & Rifkind as Interim Liaison Class Counsel) in an ERISA class action also pending in this Court. *See In re R.H. Donnelly Corp. ERISA Litig.*, No. 09-cv-7571-RWG, Pretrial Order No. 1 Appointing Interim Class Counsel and Establishing Pretrial Procedures and Preliminary Schedule (N.D. Ill. Mar. 16, 2010).

Proposed Liaison Counsel Lasky & Rifkind is a unique litigation law firm with offices in New York, New York and Chicago, Illinois. The firm represents both plaintiffs and defendants

---

[6] Notably, as alleged in Chester County's complaint, Risperdal and Seroquel are two of the psychopharmacologic drugs with which Depakote competed as an off-label treatment for behavioral issues associated with dementia and Alzheimer's. *See Chester County* Complaint, at ¶72.

in complex commercial litigation, securities fraud actions, corporate takeover litigation, general business litigation and arbitrations. The firm's attorneys have successfully prosecuted and tried numerous cases, many resulting in multimillion dollar awards or settlements. *See* Lasky & Rifkind firm resume, attached to Winchester Decl. as Exhibit B.

## IV. CONCLUSION

For the reasons set forth above, the Court should grant Plaintiff's motion and enter an Order: (i) appointing Chester County as Lead Plaintiff; (ii) appointing KTMC as Lead Counsel; and (iii) appointing Lasky & Rifkind as Liaison Counsel.

Dated: January 18, 2012

**LASKY & RIFKIND, LTD.**
Leigh Lasky
Norman Rifkind
Amelia S. Newton
Heidi VonderHeide

/s/Norman Rifkind
351 West Hubbard Street
Suite 401
Chicago, IL 60654
Tel: (312) 634-0057
Fax: (312) 634-0059

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
Justin O. Reliford
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (267) 948-2512

*Counsel for Plaintiff Chester County
Employees' Retirement Fund and Proposed
Lead Counsel*

-12-