IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHESTER COUNTY EMPLOYEES' RETIREMENT FUND, Derivatively on behalf of Nominal Defendant ABBOTT LABORATORIES, INC.<br><br>       Plaintiff,<br><br>    v.<br><br>MILES D. WHITE, DUANE L. BURNHAM, JEFFREY LEIDEN, WILLIAM DEMPSEY, RICHARD A. GONZALEZ, H. LAURANCE FULLER, ROXANNE S. AUSTIN, W. JAMES FARRELL, SAMUEL C. SCOTT, III, GLENN F. TILTON, WILLIAM A. OSBORN, ROBERT J. ALPERN, M.D., K. FRANK AUSTEN, M.D., JACK M. GREEN BERG, THOMAS R. HODGSON, DAVID A. JONES, THE RT. HON. LORD DAVID OWEN, ROBERT L. PARKINSON, JR. ADDISION BARRY RAND, W. ANN REYNOLDS, PH.D., ROY S. ROBERTS, WILLIAM D. SMITHBURG, JOHN R. WALTER, WILLIAM L. WEISS,<br><br>       Defendants,<br><br>   -and-<br><br>ABBOTT LABORATORIES,<br><br>       Nominal Defendant. | No. 11-cv-8114<br><br>Hon. Virginia Kendall |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT
HAGENS BERMAN SOBOL SHAPIRO LLP AS LEAD COUNSEL**

**Table of Contents**

I.      INTRODUCTION .................................................................................................................1

II.     HAGENS BERMAN SHOULD BE APPOINTED LEAD COUNSEL.............................2

        A.      The Quality Of The Pleadings Is A Neutral Factor Because All Of The
                Complaints Are Based On Two Preceding *Qui Tam* Complaints............................3

        B.      The Vigorousness of the Prosecution of Lawsuits Is Also a Neutral Factor Based
                on the Early Nature of the Proceedings ...................................................................4

        C.      The Factors Regarding Counsel's Adequacy – Capabilities of Counsel,
                Knowledge of the Applicable Law and Experience Handling Complex Litigation
                – All Favor Hagens Berman ....................................................................................5

                1.      Hagens Berman's Attorneys .......................................................................5

                2.      Hagens Berman's Performance...................................................................8

        D.      The Only Chicago-Based Firm Seeking Appointment as Lead Counsel, Hagens
                Berman Will Commit *and* Conserve the Resources Necessary for this Case........10

III.    APPOINTMENT OF LEAD PLAINTIFF........................................................................12

        A.      The Request for Appointment of a "Lead Plaintiff" is a Red Herring...................12

        B.      Alternatively, The Pipefitters Should Be Appointed Lead Plaintiffs ...................15

IV.     CONCLUSION..................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Cement-Lock v. Gas Tech. Inst.,
  618 F. Supp. 2d 856 (N.D. Ill. 2009) ..................................................................13

Dollens v. Zionts,
  2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001) .......................................3, 13

Duman v. Crown Zellerbach Corp.,
  107 F.R.D. 761 (N.D. Ill. 1985)...........................................................................13

Gallardo v. Bennett,
  2006 U.S. Dist. LEXIS 76216 (N.D. Cal. Oct. 10, 2006).......................................12

In re Actiq Sales & Mktg. Practices Litig.,
  790 F. Supp. 2d 313 (E.D. Pa. 2011) ...................................................................10

In re Comverse Technology, Inc. Derivative Litigation,
  2006 U.S. Dist. LEXIS 94235 (E.D.N.Y. Sept. 22, 2006).................................12, 13

In re Goodyear Tire & Rubber Co. ERISA Litig.,
  2004 U.S. Dist. LEXIS 26706 (N.D. Ohio Apr. 22, 2004).......................................3

Moradi v. Adelson,
  2011 U.S. Dist. LEXIS 122428 (D. Nev. Oct. 20, 2011) ................................2, 3, 12

N. Miami Beach Gen. Employees Ret. Fund v. Parkinson,
  2011 U.S. Dist. LEXIS 71736 (N.D. Ill. July 5, 2011)...............................2, 3, 5, 13

Recchion on behalf of Westinghouse Electric Corp. v. Kirby,
  637 F. Supp. 1309 (W.D. Pa. 1986).......................................................................3

Sparano v. Lief,
  2011 U.S. Dist. LEXIS 21144 (S.D. Cal. Mar. 3, 2011) ........................................12

Subin v. Goldsmith,
  224 F.2d 753 (2d Cir. 1955)..................................................................................3

TCW Tech. Ltd. Pshp. v. Intermedia Communs., Inc.,
  2000 Del. Ch. LEXIS 147 (Del. Ch. Oct. 17, 2000).................................................4

STATUTES

Private Securities Litigation Reform Act of 1995 ..............................................3, 12, 13

**RULES**

Fed. R. Civ. P. 19 ...........................................................................................................13

Fed. R. Civ. P. 23.1 ..................................................................................................2, 3, 13

Local Rule 40.4 ...............................................................................................................5

**OTHER AUTHORITIES**

Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002)............................4

Deborah A. DeMott, SHAREHOLDER DERIVATIVE ACTIONS, LAW AND PRACTICE
    (2011-2012 ed.)...................................................................................................14

MANUAL FOR COMPLEX LITIGATION (4th ed. 2011).......................................................12

## I.     INTRODUCTION

Institutional Plaintiffs, Pipefitters Local Union 537 Pension Fund, Pipefitters Local Union 537 Health & Welfare Plan, and Pipefitters Local Union 537 Deferred Income Annuity Fund ("Pipefitters"), derivatively on behalf of Abbott Laboratories, respectfully request that the Court appoint Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Lead Counsel in these consolidated actions.[1]

Hagens Berman is one of the nation's most experienced plaintiffs' class action firms and the only movant with a respected presence in Chicago. Hagens Berman possesses the background, experience, and requisite legal knowledge to manage and prosecute this litigation. Hagens Berman has been repeatedly recognized as one of the nation's leading plaintiffs' law firms by the National Law Journal and, since its founding, has represented plaintiffs in securities class actions and other complex, large-scale litigation across the country. For example, Hagens Berman recently settled a securities fraud class action against Charles Schwab for $235 million, No. C 08-01510 WHA (N.D. Cal.) and, as lead counsel, has had multiple successes, such as in *Morrison Knudsen* No. 94-cv-00334-EJL (D. Idaho) (settled for $63 million), *Raytheon/Washington Group,* No. CV-01-284-S-BLW (D. Idaho) (settled for $39 million), and *Boeing*, No. C97-1715Z (W.D. Wash.) ($92.5 million settlement).

Moreover, Hagens Berman is the only firm seeking appointment as lead counsel with a Chicago-based office. Hagens Berman's Chicago partner, Elizabeth Fegan, was recognized by the Hon. Wayne Andersen for her experience in the securities and derivative area when Judge Andersen appointed Ms. Fegan to the Special Master team to assist the Court in the confirmatory discovery and settlement-approval process in *In re Waste Management Securities Litigation.*

---

[1] In addition to the Pipefitters' action, the consolidated actions consist of the following cases: *Chester County Employees' Retirement Fund v. White, et al.,* No. 11-cv-8114 ("Chester County"); *Jacksonville Police & Fire Pension Fund v. White, et al.,* No. 11-cv-8383 ("Jacksonville Police"); *Pinchuck et al. v. White et al.,* No. 11-cv-8499 ("Pinchuck"); and *Louisiana Municipal Police Employees Retirement System v. White, et al.*, No. 11-cv-8631 ("Louisiana Municipal"). Further, on January 17, 2011 an additional derivative action was filed, *Public School Retirement System of the School District of Kansas City, Missouri v. White, et al.*, No. 12-cv-00355 ("Kansas City").

Hagens Berman's local presence will reduce costs and increase efficiencies for the parties and the Court. Hagens Berman is thus best suited to manage the case.

While the Court should appoint Hagens Berman Lead Counsel, the Chester County plaintiffs request for appointment as "lead plaintiff" is a red herring.[2] Indeed, this request inappropriately borrows a requirement found in the Private Securities Litigation Reform Act of 1995, which is not present under Rule 23.1 of the Federal Rules of Civil Procedure. And, it begs the Court to determine the adequacy of the plaintiffs on an incomplete record while making numerous assumptions regarding diversity, joinder and indispensable parties, all of which are inappropriate at this stage in the proceedings. Rather, once appointed, Lead Counsel should have the opportunity to determine the appropriate parties to the action (including both Plaintiffs and Defendants), analyze the appropriate causes of action, and file a Consolidated Amended Complaint. Nonetheless, if the Court is inclined to appoint a Lead Plaintiff, the Pipefitters should be appointed as they are prepared to zealously supervise and prosecute this matter.

Accordingly, for the reasons provided below, Plaintiffs respectfully request that this Court appoint Hagens Berman as lead counsel.

## II.    HAGENS BERMAN SHOULD BE APPOINTED LEAD COUNSEL

It is well established that a court may appoint lead counsel to direct and manage a complex case, including in a derivative action like the present. *See* Fed. R. Civ. P. 23.1 advisory committee's notes (1966) (recognizing that "[t]he court has inherent power to provide for the conduct of the proceedings in a derivative action, including the power to determine the course of the proceedings"). In appointing lead counsel in consolidated derivative actions, courts have considered several factors, including: "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel." *Moradi v. Adelson*, 2011 U.S. Dist. LEXIS 122428, at *7 (D. Nev. Oct. 20, 2011). *See also N. Miami Beach Gen. Employees Ret. Fund v. Parkinson,* 2011 U.S. Dist. LEXIS 71736, at *5-6 (N.D. Ill. July 5, 2011) (incorporating the "quality of pleadings" and "the vigor with which the plaintiff has

---

[2] *See* Dkt. # 94 at 1.

pursued the suit").[3] "Some courts have also considered the criteria for appointing interim class counsel set forth in Fed. R. Civ. P. 23(g)(1)," i.e., "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." *Moradi*, 2011 U.S. Dist. LEXIS 122428, at *7.

Here, based on a reasoned analysis of each of the relevant factors, a clear choice emerges: Hagens Berman as lead counsel.

## A.    The Quality Of The Pleadings Is A Neutral Factor Because All Of The Complaints Are Based On Two Preceding Qui Tam Complaints

All of the complaints filed in these consolidated proceedings follow the February 2011 unsealing of the related *qui tam* litigation against Abbott filed by Plaintiff-Relators Meredith McCoyd and Tamara Dietzler.  *See* Amended Complaint in *United States ex rel. McCoyd v. Abbott Laboratories,* Case No. 07-cv-0081 (W.D. Va.); *United States ex rel. Dietzler v. Abbott Laboratories,* Case No. 09-cv-2118 (N.D. Ill.) ("*Qui Tam* Actions"), attached as Ex. A and B.[4]

---

[3] The court in *N. Miami Beach* also considered: (1) "the plaintiffs' financial interest," (2) "the preference for institutional investors to lead a lawsuit for shareholders" and (3) "the plaintiff's arrangement on the payment of attorney's fees."  2011 U.S. Dist. LEXIS 71736, at *5-6.  Here, these factors are neutral: all of the plaintiffs are institutional investors, each of which presumably negotiated their attorneys' fee arrangements at arm's length, as did the Pipefitters.

Moreover, it is irrelevant which of the Plaintiffs owns the most shares; that factor exists only in the PSLRA.  *Compare* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth the PSLRA criteria for appointment of lead plaintiff, with the rebuttable presumption that it should be the plaintiff with "the largest financial interest in the relief sought by the class") *with* Fed. R. Civ. P. 23.1 (maintaining no such requirement).  *See also Recchion on behalf of Westinghouse Electric Corp. v. Kirby*, 637 F. Supp. 1309, 1315 (W.D. Pa. 1986) ("The fact that plaintiff owns only one share of stock standing alone cannot serve as the basis for dismissing the complaint."); *Subin v. Goldsmith*, 224 F.2d 753, 761 (2d Cir. 1955) ("Of course, it is irrelevant that plaintiff owns but a few shares."); *Dollens v. Zionts,* 2001 U.S. Dist. LEXIS 19966, at *21 (N.D. Ill. Dec. 4, 2001) (ultimately appointing "lead plaintiff" based on PSLRA factors in a derivative action, but declining to select party with largest financial interest where that party had "not otherwise demonstrated his ability to prosecute the case any more vigorously than other plaintiffs").

[4] While Philadelphia-based Kessler Topaz (Chester County) has touted itself for Lead Counsel, claiming to be the first on file, Kessler was actually the fourth following the two *Qui Tam* Complaints and *Goodman v. White, et al.,* No. 11-cv-7940 (N.D. Ill. filed Nov. 8, 2011) (subsequently dismissed).  Indeed, a race to the courthouse is not a factor in determining the selection of lead counsel.  *See generally In re Goodyear Tire & Rubber Co. ERISA Litig*., 2004 U.S. Dist. LEXIS 26706, at *15-16 (N.D. Ohio Apr. 22,

Because every complaint acknowledges that it is based, in large part, on the wrongdoing alleged in the *Qui Tam* Actions,[5] no individual plaintiff has relied on a proprietary investigation to plead their respective case.

Notwithstanding, the Pipefitters Complaint meets this first factor. The Pipefitters' Verified Shareholder Derivative Complaint, spanning forty-four (44) pages, contains detailed factual allegations covering a substantial time period. Moreover, the Pipefitters alleged additional causes of action not recognized by all of the other plaintiffs, including a count under Illinois law for waste of corporate assets. *See, e.g.,* Pipefitters Compl., Count II (alleging waste of corporate asset claim).[6]

Accordingly, this Court should find that the first factor has been satisfied by the Pipefitters Plaintiffs and, at the very least, is neutral among all the competing counsel because each of the complaints follows the *Qui Tam* Actions.

## B. The Vigorousness of the Prosecution of Lawsuits Is Also a Neutral Factor Based on the Early Nature of the Proceedings

The second factor, vigorousness of the prosecution of lawsuits, has also been met here. At this early stage in the litigation, each firm has researched and drafted a complaint based on allegations that have come to light in the *Qui Tam* Actions. *See supra* at 3-4. And, while one firm has filed an unopposed, routine motion to consolidate these actions (following the

---

2004) ("Congress has discouraged courts overseeing complex litigation from selecting a leadership structure based on the timing of a plaintiff's complaint...To do so would violate the Manual for Complex Litigation's requirement that the Court conduct an 'independent review' of proposed Lead Counsel's relative qualifications."); *TCW Tech. Ltd. Pshp. v. Intermedia Communs., Inc.,* 2000 Del. Ch. LEXIS 147, at *9 (Del. Ch. Oct. 17, 2000) ("It is not the race to the courthouse door, however, that impresses the members of this Court when it comes to deciding who should control and coordinate litigation on behalf of the shareholder class."); Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 9.35 (4th ed. 2002) ("The first attorney to file is not entitled to special consideration for appointment as lead counsel simply by winning the race to the courthouse.").

[5] *See, e.g.,* Pipefitters Compl., ¶ 68; Louisiana Municipal Police Employees Retirement System Compl., ¶¶ 8, 13, 52, 71, 78, 80-87, 121; Chester County Compl., ¶¶ 1, 5, 7, 62, 63, 84, 93, 103, 120, 133-35, 149; Pinchuck Compl. ¶¶ 34, 36, 39-40, 43, 45, 47, 49, 51-55; Jacksonville Police Compl. ¶¶ 46, 48, 51-52, 55, 57, 59, 61, 63-72, 89; Kansas City Compl., ¶¶ 2, 11, 113, 186, 197.

[6] Only two other complaints allege a waste of corporate assets. *See* Jacksonville Police Compl., Count II; Kansas City Compl., Count II.

straightforward factors presented in Local Rule 40.4), *see* generally Dkt. #8, the Pipefitters and Hagens Berman, without having received any formal notice, attended and participated in the hearing for that motion.

Nevertheless, the Pipefitters have no reason to believe that any plaintiff (or their counsel) will do anything but vigorously pursue the consolidated litigation. *See, e.g., N. Miami Beach,* 2011 U.S. Dist. LEXIS 71736, at *5-6 (noting "[b]oth plaintiffs have shown admirable vigor in pursuing this litigation," adding "[v]igorousness of effort is not going to be a problem in this lawsuit; this factor too is a wash."). Accordingly this Court should find that, while Hagens Berman has vigorously prosecuted Plaintiffs' lawsuit, this factor is neutral among all firms.

**C.    The Factors Regarding Counsel's Adequacy – Capabilities of Counsel, Knowledge of the Applicable Law and Experience Handling Complex Litigation – All Favor Hagens Berman**

The next three factors, i.e.*,* the capabilities of counsel, counsel's knowledge of the applicable law and their experience handling complex litigation of the kind faced here, all address counsel's adequacy to lead this case and favor Hagens Berman.

Hagens Berman is a fifty-five lawyer firm, with ten offices in Chicago, New York, Seattle, Washington D.C., Boston, Berkeley, Los Angeles, Phoenix, Minneapolis and Colorado Springs. Since its founding in 1993, Hagens Berman has represented plaintiffs in a broad spectrum of complex, multi-party cases. The firm has been recognized in courts throughout the United States for its ability and experience in handling major complex litigation.[7] As one of the country's leading firms in the securities litigation arena, Hagens Berman advises clients in both individual and class action cases.

**1.    Hagens Berman's Attorneys**

We will devote the resources necessary to aggressively prepare a case for trial. To do so, we will rely on several of the firm's most experienced litigators and trial lawyers, including:

---

[7]    *See* Hagens Berman Firm Resume, Ex. C.

5

**Steve W. Berman:**

Mr. Berman helped start the firm in 1993, is the managing partner, and is a member of the Illinois state bar, this Court's Trial Bar, and the Seventh Circuit. He has served as lead or co-lead counsel in antitrust, securities, consumer, products liability, employment class actions, and complex litigations throughout the country, including MDL actions. For example, Mr. Berman was the lead trial lawyer in *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.). He tried the class case against four manufacturers and successfully argued the appeal from the trial before the First Circuit. Mr. Berman was also the lead counsel in *New England Carpenters v. First DataBank, et al.*, No. 05-11148-PBS (D. Mass.), on behalf of a nationwide class of private payors that purchased prescription brand name drugs. Hagens Berman achieved a $350 million settlement eleven days before trial was scheduled to start. Mr. Berman was also lead counsel in *In re Charles Schwab Corp. Secs. Litig.*, No. 08-cv-01510 (N.D. Cal.), a recent securities class action before the United States District Court, Northern District of California, that settled while arguing *in limine* motions for approximately $235 million or a 42.5% recovery for the federal class and an 80% recovery for the California class, once again on the eve of trial.

Perhaps most notable is Mr. Berman's role as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark Tobacco Litigation. That case resulted in the largest settlement in history, a settlement that occurred while Mr. Berman was in trial in *State of Washington v. Philip Morris, et al.*

**Elizabeth A. Fegan:**

Ms. Fegan, the managing partner of Hagens Berman's office in Oak Park, Illinois, has served as lead or co-lead counsel in antitrust, consumer, and complex litigations throughout the country, including MDL actions. Moreover, Ms. Fegan was appointed by the Honorable Wayne Andersen in the United States District Court for the Northern District of Illinois to the Special Master team assisting the Court in the settlement-related confirmatory discovery process and approval process in the *In re Waste Management Securities Litigation*, as well as by the Circuit

Court of Cook County to the Special Master team assisting the Court with certain aspects of the class action fairness hearings in *Wolens et al. v. American Airlines*, Nos. 88 CH 7554, 89 CH 119. Further, Ms. Fegan has been appointed Special Assistant Corporation Counsel on behalf of the City of Chicago, the Chicago Park District, and the Public Building Commission of Chicago numerous times in actions arising under Illinois law. Ms. Fegan is a member of the Illinois bar and the bars in this District and the Seventh Circuit.

### **Daniel J. Kurowski:**

Mr. Kurowski, an associate in Hagens Berman's Oak Park office, graduated cum laude from The John Marshall Law School, worked as a judicial extern for Judge Ronald A. Guzmán, and held two post-graduation clerkship positions, initially with Judge Paul E. Plunkett, then with Magistrate Judge Maria Valdez. Mr. Kurowski is also a published author regarding local practice and procedure in the Northern District of Illinois. *See generally* "How To Correctly Respond To A Movant's Local Rule 56.1 Statement Of Facts," FEDERAL CIVIL PRACTICE (ISBA Nov. 2004), at 2.

### **Peter E. Borkon:**

Mr. Borkon, an associate in Hagens Berman's Berkeley office, is admitted to practice in Illinois state and federal courts, as well as in California. His practice has been focused on complex civil litigation, particularly securities and antitrust class actions and shareholder derivative suits since 2000. Mr. Borkon was a key team member in *In re Homestore Securities Litigation*, resulting in settlements valued at more than $100 million, as well as in *In re Northwest Biotherapeutics Securities Litigation*, *In re BigBand Networks Securities Litigation*, *In re Charles Schwab Corp. Securities Litigation* and *In re Reserve YieldPlus Fund Securities Litigation*. Mr. Borkon is a member of, *inter alia,* the National Association of Public Pension Attorneys (NAPPA), the International Foundation of Employee Benefit Plans (IFEBP) and the National Conference on Public Employee Retirement Systems (NCPERS) where he has spoken on securities litigation topics including the need for investor friendly legislation and the recent Dodd-Frank regulations implemented by the SEC.

2.      **Hagens Berman's Performance**

In addition, the Court may wish to consider the performance of proposed lead counsel applicants measured by percentage of recovery for class members and the efforts undertaken to place recoveries in the hands of those injured as opposed to being unclaimed.

In this regard Hagens Berman proffers two examples of the vigor in which it represents classes in complex litigation.  In the *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.), Hagens Berman was instrumental in obtaining over $340 million in recoveries recovered for the class, after successfully winning a "test-class" trial against three of the defendants.  In settlements with AstraZeneca and several defendants included in the "Track Two" tranche of the litigation, consumer members of the classes will receive ***three times*** their actual damages during the heart of the liability period.  In the settlement with defendant Bristol-Myers Squibb, consumer members of the classes will receive ***double*** their actual damages during that same period.  In addition, by making substantial efforts to obtain relevant data from the Centers for Medicare and Medicaid Services, we ensured that most members of the consumer classes received their recovery with little inconvenience.

*In re Charles Schwab Corp. Securities Litigation*, No. 08-cv-01510 (N.D. Cal.), a securities class action, provides another example of the zealousness with which Hagens Berman pursues recovery for class members.  In that case, where Hagens Berman served as sole lead counsel, the Federal Class recovered approximately ***forty-two percent*** of their recognized losses, while the California Class recovered approximately ***eighty-two percent***.  And we instituted a payment system so that checks were sent directly to most class members without the need to complete a claim form of any kind.  As a result, 97 percent of the fund was dispersed during the initial distribution, a nearly unheard-of statistic in the annals of large class action settlements.

Some of the firm's other noteworthy successes involving shareholder issues include:

- ***Enron*** – Hagens Berman was co-lead counsel representing Enron pension plan participants, recovering more than $250 million for our clients – the largest ERISA settlement in history.

- **Boeing** – The subject of a BusinessWeek feature article, this case brought to light critical production problems with the 777 airliner that Boeing internally documented and then swept under the rug until the completion of a pending merger with McDonnell Douglas. Hagens Berman worked diligently in discovery to uncover the evidence demonstrating that the company was aware of the concealed problems. Boeing eventually settled for a record-breaking sum of more than $92.5 million.

- **Morrison Knudsen** – After the company took a significant unexpected write-off, Hagens Berman filed a shareholder class action, alleging that MK's senior management concealed hundreds-of-millions of dollars in losses. After bitterly fighting the suit, MK ousted its CEO, and admitted the true extent of the losses. The firm recovered more than $63 million for investors.

- **Raytheon/Washington Group** – This suit charged Raytheon with deliberately misrepresenting the true financial condition of its Raytheon Engineers & Constructors division in order to sell this division to the Washington Group at an artificially inflated price. The case resulted in a $39 million settlement.

- **Washington Public Power Supply System ("WPPSS")** – Hagens Berman managing partner Steve Berman represented bondholders and Chemical Bank, the bondholder trustee of WPPSS Nuclear Projects 4 and 5 bonds. Following the largest municipal bond default in history ($2.25 billion), the trustee, joined by bondholders, brought one of the most complex and protracted securities fraud cases ever filed. After more than five years of litigation, the trustee and the other plaintiffs recovered more than $850 million in settlements from more than 100 defendants.

- **WPPSS Cost Sharing Litigation** – The firm represented Chemical Bank, the trustee for WPPSS Projects 4 and 5 bondholders, in litigation against nearly 100 defendants. The bank recovered $55 million in costs misallocated among the WPPSS nuclear projects.

- **Boston Chicken** – Hagens Berman investigated this case, unraveled an extremely complex capital structure, and filed the first complaint alleging that Boston Chicken used various off-balance sheet tactics to hide huge operating losses. The case settled for approximately $20 million.

Further, this derivative action is based on Defendants' actions in causing and/or allowing Abbott to knowingly engage in the illegal marketing and sale of Abbott's anti-epileptic drugs known as Depakote, which resulted in a settlement with federal and state governments of $1.3 billion. Hagens Berman is well-versed in litigating and managing complex pharmaceutical litigation, including allegations of illegal off-label marketing such as this. For example, in the

*Zyprexa Marketing and Sales Practices Litigation – Connecticut,* Hagens Berman served as outside counsel to Attorney General Richard Blumenthal in litigation alleging that Lilly engaged in unlawful off-label promotion of the atypical antipsychotic Zyprexa. The litigation also alleged that Lilly made significant misrepresentations about Zyprexa's safety and efficacy, resulting in millions of dollars in excess pharmaceutical costs borne by the State and its taxpayers. The State's Zyprexa litigation concluded with a $25 million settlement that Hagens Berman negotiated. And, as chair of the lead counsel committee in the on-going consolidated class action arising out Cephalon, Inc.'s alleged off-label marketing of the narcotic pain-killer Actiq, Hagens Berman's work and direction in that case recently resulted in the complete denial of Defendants' motions for summary judgment. *See generally In re Actiq Sales & Mktg. Practices Litig.,* 790 F. Supp. 2d 313 (E.D. Pa. 2011).

Moreover, Hagens Berman is a battle-hardened firm that litigates vigorously and will not hesitate to take meritorious cases to trial. We have successfully achieved trial verdicts in complex pharmaceutical cases after weeks of trial time, including recent verdicts for plaintiffs in *In re Pharmaceutical Industry Average Wholesale Price Litigation* ($13.5 million bench verdict against AstraZeneca and Bristol Myers Squibb regarding the companies' price inflation of pharmaceuticals) and the *Neurontin Third-Party Payor Litigation* ($47 million jury verdict against Pfizer involving the company's off-label marketing of Neurontin).

For these reasons, Hagens Berman readily meets the factors inquiring into the capabilities of counsel, knowledge of the applicable law and experience handling complex litigation.

**D.      The Only Chicago-Based Firm Seeking Appointment as Lead Counsel, Hagens Berman Will Commit and Conserve the Resources Necessary for this Case**

Hagens Berman will commit all resources necessary to litigate this derivative action, both financially and in terms of expertise in the issues involved in this case. The firm employs 55 attorneys skilled at managing multi-state and nationwide class actions through an organized, coordinated approach that implements an efficient and aggressive prosecutorial strategy in order to place maximum pressure on any defendant.

Moreover, and perhaps just as important as the resources that the firm will commit to the case, this Court should also analyze the resources that will be ***conserved*** by the appointment of Hagens Berman to lead these consolidated actions. *See* Manual for Complex Litigation § 10.22 (4th ed. 2011) ("Counsel designated by the court also assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and counsel."). ***Hagens Berman is the only firm with a local presence seeking appointment as Lead Counsel.***

Steve Berman, Hagens Berman's managing partner, is admitted to the Illinois bar and this District's Trial Bar. Moreover, Elizabeth Fegan, the managing partner of Hagens Berman's Oak Park office, attended Loyola University Chicago School of Law and has practiced within this District for more than 15 years. During her tenure, she has been appointed to work on a Special Master team by the Hon. Wayne Andersen as well as been recognized for her handling of complex cases in this District. Likewise, Daniel J. Kurowski, an associate in Hagens Berman's Oak Park office, has extensive experience with the procedures in this Court, gained both from his externship and law clerk experiences with Judge Ronald A. Guzmán, Judge Paul E. Plunkett, and Magistrate Judge Maria Valdez, as well as his private practice at Hagens Berman.[8]

Indeed, because the out-of-state firms seeking appointment as lead counsel in this consolidated proceeding do not have a presence in this District and are not members of this Court's bar, they also seek additional appointments of local liaison counsel. In addition to running up the costs in this case with layers of attorneys, the selection of liaison counsel implicitly admits knowledge deficits of the local rules and procedures. *See,* e.g., Dkt. # 15 (striking motion for lack of "three full business days in between the filing date and the motion hearing"). No such deficit exists with Hagens Berman. The firm will not be required to spend endless hours billing for case-related travel given the firm's location and the local ties of this

---

[8] Moreover, to the extent that discovery proceeds outside of Illinois, Hagens Berman is best suited to maximize efficiencies with its offices in each region of the United States to minimize travel and expense.

litigation. Nor will additional time be needed for Hagens Berman to consult and coordinate with "liaison counsel" or become familiar with local practices and procedures.

Thus, Hagens Berman is the only firm that will both commit the resources necessary to litigating this case to resolution *and* conserve resources given the firm's strong local presence.[9]

## III.   APPOINTMENT OF LEAD PLAINTIFF

### A.   The Request for Appointment of a "Lead Plaintiff" is a Red Herring

Plaintiff Chester County Employees' Retirement Fund ("Chester County") requests that it be appointed "lead plaintiff." *See* Dkt. # 94 at 1. This request is a red herring. First, the appointment of a "lead plaintiff" borrows a requirement found in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which is not applicable to derivative actions. Second, Chester County requests the Court to make premature rulings on an incomplete record.

First, while the "lead plaintiff" concept applies in federal securities class actions, it does not apply in derivative actions that include state law claims such as those found here. *See, e.g., Sparano v. Lief*, 2011 U.S. Dist. LEXIS 21144, at *5-6 (S.D. Cal. Mar. 3, 2011) ("In securities fraud actions, the appointment of a lead plaintiff is governed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67 (1995). There is no such statute addressing the appointment of a lead plaintiff in derivative actions.").[10]

---

[9] Should the Court be inclined to appoint an out-of-state firm as a lead counsel, the Court should appoint Hagens Berman as co-lead counsel. Hagens Berman has worked (and continues to work) amicably and closely with other firms in this litigation, including Kessler Topaz (Chester County) and Spector Roseman (Jacksonville Police), in many other cases outside this litigation.

[10] *See also Moradi v. Adelson,* 2011 U.S. Dist. LEXIS 122428, at *5-7 (D. Nev. Oct. 20, 2011) (declining to appoint a lead plaintiff); *Sparano v. Lief*, 2011 U.S. Dist. LEXIS 21144, at *5-6 (S.D. Cal. Mar. 3, 2011) (declining to appoint lead plaintiff where "the matter of who should be lead plaintiff" was contested and given the lack of binding appellate authority that would indicate "that a lead plaintiff should be appointed"); *Gallardo v. Bennett*, 2006 U.S. Dist. LEXIS 76216, at *8-9 (N.D. Cal. Oct. 10, 2006) (declining to appoint lead plaintiff, particularly given the absence of binding appellate authority authorizing the appointment of a lead plaintiff); *In re Comverse Technology, Inc. Derivative Litigation*, 2006 U.S. Dist. LEXIS 94235, at *4-6 (E.D.N.Y. Sept. 22, 2006) (internal citations and quotations omitted) ("There is no statutory authority, such as the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires the Court to appoint a lead plaintiff in a shareholder derivative action. *** Indeed, many courts in [the Eastern District of New York] and others have consolidated derivative actions, appointed lead counsel, but have not appointed a lead plaintiff.").

12

Furthermore, the appointment of a lead plaintiff is inappropriate for another practical reason: it asks the Court to determine, at this early stage in the litigation and with an inadequate factual record, whether any one plaintiff is "adequate" under Rule 23.1. *In re Comverse* is thus instructive. In rejecting the parties' "strenuous[]" arguments that each was "a more 'adequate representative' and will more 'vigorously litigate' this case than the others," the court noted that it could not "on this record [i.e., on three competing motions for the appointment of lead plaintiff and lead counsel], predict which plaintiff is most subject to attack, or quantify which plaintiff is the most 'adequate representative' of the interest of the shareholders." *In re Comverse*, 2006 U.S. Dist. LEXIS 94235 at *8 n.2.[11]

Plaintiff Chester County's premature musings that certain plaintiffs do not appear to be "adequate" because of alleged diversity jurisdiction issues are problematic and fraught with several assumptions. *See* generally Dkt. # 94 at 3-4. First, given the case's infancy, no jurisdictional discovery has taken place in this case. Second, the argument assumes: (1) that all of the director defendants are necessary parties to this action, and (2) that the court has personal jurisdiction over any non-diverse defendant. *See, e.g., Duman v. Crown Zellerbach Corp.*, 107 F.R.D. 761, 763 (N.D. Ill. 1985) ("The 'joinder of persons needed for just adjudication' under Rule 19 requires a two-step analysis. First, the court must determine whether a person omitted as a party should be joined if feasible, following the guidelines of Rule 19(a). In a suit by shareholders alleging injury to themselves and the corporation by an action of the corporation's board, several courts have found that a director 'claims an interest relating to the subject of the action,' and should be joined, if possible. If, however, joinder of that person would deprive the court of jurisdiction either because it lacks personal jurisdiction over him or because his presence would eliminate diversity, then the court moves to a second determination: whether that person is

---

While two courts in this district have appointed a "lead plaintiff" in a consolidated derivative action, *see* generally *Dollens,* 2001 U.S. Dist. LEXIS 19966, at *1, and *N. Miami Beach,* 2011 U.S. Dist. LEXIS 71736, at *1, both courts mistakenly borrow from the PSLRA and should not be strictly followed here.

[11] Moreover, "[w]hether a plaintiff fairly and adequately represents those interests is a matter within the trial court's discretion, on which Defendants bear the burden of proof." *Cement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 887 (N.D. Ill. 2009) (citations omitted).

'indispensable.' The court may still find 'in equity and good conscience' that the action may proceed without him. The second determination is required here. Seven of the thirteen directors of Crown Zellerbach apparently reside in California and it is not certain that any is subject to process in Illinois. If joined, their presence would require dismissal of the suit for lack of jurisdiction over them. The weight of authority in this circuit and elsewhere holds that in an action against a corporation, when joinder would defeat jurisdiction in plaintiff's chosen forum, normally the action should proceed without directors, officers or controlling shareholders.") (internal citations omitted). *See also* Deborah A. DeMott, SHAREHOLDER DERIVATIVE ACTIONS, LAW AND PRACTICE § 4:7 (2011-2012 ed.) ("Usually the corporation's directors are not indispensable parties to actions involving it. If the suit alleges wrongdoing by a director, the director must be joined as a defendant so that the relief sought can be granted if the plaintiff prevails. On the other hand, if the alleged wrongdoing was committed by the directors, acting as a board, joinder of all of the directors as defendants is not necessary. But at least one director must be named as a defendant in a derivative action, and if the joinder of additional directors would defeat the court's jurisdiction, unless the absent directors are likely to be prejudiced the suit may proceed without them. Presence of a nondiverse indispensable party destroys federal diversity jurisdiction."). Thus, this Court should not act upon Chester County's premature request to make findings.

Once Lead Counsel is appointed, Lead Counsel will have the discretion to determine whether and to what extent all of the currently-named directors are necessary parties and this Court will then have the opportunity to rule on any motions brought by Defendants. However, appointing a Lead Plaintiff based on a premature and incomplete analysis of issues that impinge upon diversity, joinder and indispensable parties should be rejected.

Accordingly, given the number of reasons that justify a decision not to appoint a lead plaintiff, this Court should decline to do so. Rather, this Court should appoint Lead Counsel and provide Lead Counsel the opportunity to consult with all plaintiffs' counsel of record, determine the appropriate parties to the action (including both Plaintiffs and Defendants), research and

14

analyze the appropriate causes of action, and file a Consolidated Amended Complaint that brings each of the overlapping pieces of these consolidated actions together.

**B.    Alternatively, The Pipefitters Should Be Appointed Lead Plaintiffs**

The Pipefitters currently own shares of Abbott and have owned shares during the applicable period.  They are aware of their obligations as lead plaintiffs and are committed to the zealous prosecution and supervision of this case.

The Pipefitters' Plaintiffs have served as lead plaintiffs in several securities cases, including *Pipefitters Local 537 Annuity Fund v. Wilmington Trust Corp*, No. 10-cv-00990l-LPS (D. Del.); *Pipefitters Local Union #537 Trust Funds v. William D. Johnson, et al.* 11-cv-739; *City of Livonia Employees Retirement System v. Wyeth, et al.*, No. 07 Civ. 10329 (RJS) (S.D.N.Y); and *Pipefitters Local Union #537 Trust Funds v. William D. Johnson, et al.*, 11-CVS-000739 (Sup. Court, Wake Cty N.C.).  Based on that experience, they have carefully selected the attorneys that they believe are best suited to act as Lead Counsel in this litigation and will review and supervise this litigation for the benefit of investors.

## IV.    CONCLUSION

For the reasons provided above, and for good cause shown, Plaintiffs respectfully request that this Court appoint Hagens Berman Sobol Shapiro LLP as lead counsel for all related consolidated actions, decline to enter an order to appoint a lead plaintiff, and grant such other and further relief as this Court deems appropriate.

Dated:  January 18, 2012                    Respectfully submitted,


                                            By:   /s/ Elizabeth A. Fegan
                                            Elizabeth A. Fegan
                                            Daniel J. Kurowski
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
                                            1144 W. Lake Street, Suite 400
                                            Oak Park, IL  60301
                                            Telephone:  (708) 628-4949
                                            Facsimile:  (708) 628-4950
                                            E-mail: beth@hbsslaw.com
                                            E-mail: dank@hbsslaw.com

                                            Steve W. Berman
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
                                            1918 Eighth Avenue, Suite 3300
                                            Seattle, WA  98101
                                            Telephone: (206) 623-7292
                                            Facsimile:  (206) 623-0594
                                            E-mail: steve@hbsslaw.com

                                            Peter E. Borkon
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
                                            715 Hearst Ave., Suite 202
                                            Berkeley, CA 94710
                                            Telephone (510) 725-3000
                                            Facsimile (510) 725-3001
                                            E-mail: peterb@hbsslaw.com

                                            *Attorneys for Institutional Plaintiffs Pipefitters
                                            Local Union 537 Pension Fund, Pipefitters Local
                                            Union 537 Health & Welfare Plan, and Pipefitters
                                            Local Union 537 Deferred Income Annuity Fund*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on January 18, 2012, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT HAGENS BERMAN SOBOL SHAPIRO LLP AS LEAD COUNSEL, together with all attachments thereto, was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

/s/ Elizabeth A. Fegan
