IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| CHESTER COUNTY EMPLOYEES' RETIREMENT FUND, derivatively on behalf of nominal defendant ABBOTT LABORATORIES, | ) ) ) ) ) | |
| Plaintiff, | ) | 11 C 8114 |
| v. | ) ) | Judge Virginia M. Kendall |
| | ) | |
| MILES D. WHITE, et al., | ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Chester County Employees' Retirement Fund ("Chester County"), Jacksonville Police & Fire Pension Fund ("Jacksonville") and Pipefitters Local Union 537 Pension Fund ("Pipefitters") move to appoint lead counsel in a shareholder derivative suit against Abbott Laboratories, Inc. ("Abbott"); in addition, Chester County and Jacksonville move to appoint lead plaintiff, which Pipefitters argues is premature, but in the alternative also moves to appoint itself.[1] For the following reasons, the Court grants Jacksonville's motion, (Doc.99), denies the remaining motions, (Docs. 94, 110, 121, 130), and appoints Jacksonville as lead plaintiff, Spector Roseman as lead counsel and Susman Heffner as local counsel.

**BACKGROUND**

The Court consolidated the following actions under Federal Rule of Civil Procedure 42(a): *Chester County Employees' Retirement Fund v. White, et al.*, No. 11 C 8114 ("Chester County");

---

[1] Also in the alternative, if either Chester County or Jacksonville is selected as lead counsel, Pipefitters moves to appoint itself as co-lead counsel.

*Jacksonville Police & Fire Pension Fund v. White, et al.*, No. 11 C 8383 ("Jacksonville"); *Pinchuck et al. v. White, et al.*, No. 11 C 8499 ("Pinchuck"); *Louisiana Police Employees Retirement System v. White, et al.*, No. 11 C 8631 ("LAMPERS"); *Pipefitters Local Union 537 Pension Fund, et al. v. White, et al.,* No. 11 C 8886 ("Pipefitters"); *Public School Retirement System of the School District of Kansas City, Missouri v. White, et al.*, No. 12 C 00355 ("Kansas City"). (Docs. 28, 116). All cases presented a stockholder's derivative action brought on behalf of and for the benefit of Abbott Laboratories ("Abbott") against Abbott's Board of Directors ("Defendants") for mismanagement and breaches of fiduciary duties when engaging in off-label marketing of the drug Depakote, which prompted an investigation by the U.S. Department of Justice for violations of federal laws and regulations. Abbott tentatively agreed to pay approximately $800 million in civil claims and $500 million in criminal penalties, which allegedly caused Abbott's shareholder equity and market capitalization to drop, thereby injuring Abbott and its shareholders. All three movants timely moved to appoint lead plaintiff and lead counsel.[2]

**STANDARD OF REVIEW**

While there is statutory guidance for appointing a lead plaintiff and lead counsel in a securities fraud action, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No.

---

[2] On February 8th, 2012, Pipefitters Local Union No. 120 Pension Fund ("Pipefitters 120") filed a motion in opposition to the motions at issue, asserting its position as an interested party due to its holding of 5,900 shares and its request for books and records pursuant to 805 Ill. Comp. Stat. 5/7.75. (Doc. 121). In addition, on February 9th, 2012, West Virginia Pipe Trades Health and Welfare Fund and the Montini Family Trust ("West Virginia") filed a notice, as an interested party holding shares, that it might move for appointment as lead plaintiff. (Doc. 127). Pipefitters 120 argues that the Court should deny the motions outright, or stay its decision, pending the filing of its own complaint because it is certain to be superior due to its request for books and records and ability to plead demand futility. This would require the Court to put the cart before the horse, by determining whether any movant meets the substantive pleading standards of Rule 23.1 prior to appointing a lead plaintiff–which is particularly onerous when a derivative action can plead demand futility without a books and records request. *See, e.g., In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 809 (7th Cir. 2003). This would also further delay progress in litigation of this action until either or both decides to draft a complaint–which as of the date of this Order, neither interested party has filed. The motion is denied and the notice is noted.

104-67, 109 Stat. 737 (1995), there is no such statute addressing the appointment of a lead plaintiff in a shareholder derivative action. Federal Rule of Civil Procedure 23.1 requires only that a plaintiff in a derivative action "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation." When exercising discretion to appoint a lead plaintiff and lead counsel–which is essentially case management, rather than adjudication–courts have proceeded in either of two ways: appointment of both lead plaintiff and lead counsel, or appointment of solely lead counsel. In declining to appoint lead plaintiff, courts have reasoned that a derivative action is filed on behalf of a company so "it is unclear what benefits there are to appointing a lead plaintiff, especially when lead counsel is appointed." *In re Arena Pharms., Inc. S'holder Derivative Litig.*, 2011 U.S. Dist. LEXIS 21144 at *2 (S.D. Cal. Mar. 3, 2011); *accord In re Comverse Tech., Inc. Derivative Litig.*, 2006 U.S. Dist. LEXIS 94235, 5-6 (E.D.N.Y. Sept. 22, 2006)("[M]any courts in this district and others have consolidated derivative actions, appointed lead counsel, but have not appointed a lead plaintiff.")(citing cases); *accord Moradi v. Adelson*, 2011 U.S. Dist. LEXIS 122428 (D. Nev. Oct. 20, 2011). Pipefitters urges the Court to follow this line of cases, arguing that the decision is improperly premised on the PSLRA and premature, so that the chosen lead counsel can then choose its lead plaintiff. In contrast, courts within the Northern District of Illinois have chosen to appoint a lead plaintiff simultaneously with lead counsel. *See Dollens v. Zionts*, 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001)("*Dollens*"); *see N. Miami Beach Gen. Emples. Ret. Fund v. Parkinson*, 2011 U.S. Dist. LEXIS 71736 (N.D. Ill. July 5, 2011)("*North Miami Beach*"); *see also In re Guidant Corp. S'holders Derivative Litig.*, 2003 U.S. Dist. LEXIS 19880 (S.D. Ind. Nov. 5, 2003). There exists no Seventh Circuit authority, or any Circuit authority, indicating that lead counsel should be appointed without a lead plaintiff, but Rule 23 addresses the

subject and suitability of lead plaintiffs and makes no mention of lead counsels, much less suggests that the Court should pick a lead counsel and then propose a platter of plaintiffs from which to choose its lead. *See also Dollens* at *21 ("lead plaintiffs, absent extraordinary circumstances, should be able to select their own counsel"). Therefore, the Court declines to deviate from the practice of the courts within this District and will select a lead plaintiff.

Chester County, Jacksonville and Pipefitters agree that the Court should look for guidance from *Dollens*, which states that if all of the plaintiffs are "adequate," then the Court should appoint the plaintiff who would "benefit the plaintiffs *most*." *Id.* at *8 (italics in original); *see North Miami Beach*, 2011 U.S. Dist. LEXIS 71736 at *1 (holding that when all of the plaintiffs are "adequate," the "question [] is which lead plaintiff (and lead counsel) will best represent" the interests of plaintiffs). Chester County argues that both Jacksonville and Pipefitters are inadequate, because they will not meet the requirements for diversity of citizenship under 28 U.S.C. § 1332(a)(1), since they share the same state of citizenship as some individual board members. Chester County points out that Jacksonville's Complaint refrains from naming as Defendants board members who share its citizenship of the State of Florida, while Pipefitters fail to allege any facts concerning the citizenship of any of the individuals named in its Complaint. Jacksonville argues that inclusion of the Florida-based defendants are not indispensable parties because all but two have not been associated with Abbott in the last six years, and two have not been with Abbott in the last twelve years–and the potential damages recovered would not increase with their inclusion due to the existing director and officer liability insurance. The Court finds Pipefitters' omission to be crippling to its Complaint, while Jacksonville's omission is arguably benign–but it's too early to say. At this stage, the Court will not delve into the strategy of joinder and the tactics of subpoena power. *See In re Comverse*

*Tech,, Inc. Derivative Litig.*, 2006 U.S. Dist. LEXIS 88312, 14-15 (E.D.N.Y. Dec. 5, 2006)("divergent legal theories espoused by the different complaints demonstrat[e] competing legal strategies that could be integrated when the consolidated amended complaint is filed")*: see also* Deborah A. DeMott, *Shareholder Derivative Actions, Law and Practice* § 4:7 (2011-2012 ed.)("Usually the corporation's directors are not indispensable parties to actions involving it. If the suit alleges wrongdoing by a director, the director must be joined as a defendant so that the relief sought can be granted if the plaintiff prevails. On the other hand, if the alleged wrongdoing was committed by the directors, acting as a board, joinder of all of the directors as defendants is not necessary. But at least one director must be named as a defendant in a derivative action, and if the joinder of additional directors would defeat the court's jurisdiction, unless the absent directors are likely to be prejudiced the suit may proceed without them. Presence of a nondiverse indispensable party destroys federal diversity jurisdiction."). Consequently, the Court finds that Chester County, Jacksonville and Pipefitters are equally adequate plaintiffs for the purposes of Rule 23.1.

To determine who is *most* adequate, Chester County and Jacksonville agree that the Court should consider the following factors from *Dollens*: 1) whether the plaintiff is an institutional investor; 2) the financial stake of the plaintiff; 3) whether the plaintiff is represented by capable counsel; 4) the vigorousness of prosecution; 5) the quality of the plaintiff's pleadings. *See Id.* at *13-19. Pipefitters disputes the use of the second factor, the financial stake of the plaintiff, arguing that it improperly borrows from the PSLRA.

**DISCUSSION**

All three movants agree that they are all institutional investors and therefore this factor is a wash. The Court will consider the remaining factors in turn.

**Financial Stake**

Jacksonville holds the greatest number of shares–95,500 shares worth more than $5.5 million–which is more than twice what is held by Chester County–38,4500 shares worth more than $2.1 million –and presumably more than Pipefitters, which does not provide any specifics about its own holdings. Pipefitters argues that the financial stake is immaterial and that Chester County and Jacksonville failed to plead that they held shares at the time of Defendants' alleged wrongdoings, but this is false–their Complaints adequately plead past and continuous possession of the shares. Furthermore, there is inherent value in considering the financial stake of a plaintiff because it protects against potential abuse of derivative actions. *See* 5-23.1 Moore's Federal Practice - Civil § 23.1.02 ("Rule 23.1 seeks to prevent the unrestrained use of derivative actions by minority shareholders, which would undermine the basic principle of corporate governance that the decisions of the corporation should be made by its management or, in certain situations, by an affirmative vote of a majority of the shareholders.").

In this case, Jacksonville holds the greatest financial stake in the case. In addition, three other cases that have been consolidated in this action have declared their support for Jacksonville's lead counsel–Kansas City, LAMPERS and Pinchuck. The question of whether their shares should be added to Jacksonville's in calculating its financial stake need not be resolved at this time because Jacksonville holds more than twice as many as Chester County; however, it does lend support to Jacksonville's counsel's capabilities in case management. *See North Miami Beach* at *4 (N.D. Ill. July 5, 2011)("Although North Miami and LAMPERS each have a substantial financial incentive to vigorously litigate the case, this factor does tip in Westmoreland's favor, particularly where Westmoreland owns more than double the number of shares that North Miami and LAMPERS own

6

individually."); *see Dollens* at *18 n.7 (N.D. Ill. Dec. 4, 2001)(noting split in whether individual investors may aggregate their shares "to claim the lead plaintiff prize"). Consequently, Jacksonville's large financial stake militates this factor in its favor.

**Capabilities of Counsel**

All three movants have provided detailed descriptions of their familiarity with corporate governance, shareholder derivative suits and litigation practice in the Northern District of Illinois, as well as their success in obtaining favorable outcomes and sizeable settlements. Pipefitters argues that it best meets this criterium because it is the only law firm that can serve as both lead and local counsel, due to its office in Oak Park, Illinois, and therefore would minimize travel expenses. However, this Court is disinclined to favor a law firm merely because it is local, particularly when the other proposed local counsel appear to be highly-qualified along with their lead counsels. *See Dollens* at *3 (appointing out-of-state lead and local counsel); *North Miami Beach* at *3 (same). Therefore, this factor is a wash.

**Vigorousness of Prosecution**

Chester County and Jacksonville have demonstrated particular vigor in litigating this matter to date. Frequent filing of hefty exhibits without an instructive index is disfavored by this Court, but both have demonstrated a commitment to streamlining the consolidation process. Jacksonville has also obtained the support of three other plaintiffs in the consolidated action–Kansas City, LAMPERS and Pinchuck–which indicates to the Court a commitment to cooperation amongst the parties Jacksonville's local counsel has demonstrated additional vigor by filing early both "simple" and "complex" requests lodged with the FDA under the Freedom of Information Act, 5 U.S.C. §55 *et seq.* ("FOIA"), which have yielded substantial production of documents. Chester County urges the

Court to also consider a plaintiff's priority in instituting the suit, presumably because it holds the lowest case number. Pipefitters argues that the first-filed case was in fact *Goodman v. White, et al.*, Case No. 11 C 07940, filed on November 8, 2011, and then voluntarily dismissed on November 23, 2011, and that regardless, this factor is irrelevant. The Court declines to consider first-to-file as an indication of vigor or quality of pleadings. Jacksonville filed its complaint on November 22, 2011, merely eight days after Chester County filed its complaint on November 14, 2011, while Pipefitters filed its complaint on December 14, 2011, although Pipefitters' complaint appears to be derived from the prior two complaints. Consequently, this factor weighs in favor of Chester County and Jacksonville, with greater weight to Jacksonville.

**Quality of Pleadings**

Chester County's Complaint names twenty-five defendants consisting of present and former officers, and incorrectly names Abbott Laboratories, Inc., as the nominal defendant rather than the proper party Abbott Laboratories. Jacksonville argues that this error is glaring evidence of Chester County's inadequacies in pleading. The Court finds that the corporate information is otherwise properly pled and will merely require a correction to the caption, so this error is not dispositive. Notably, Jacksonville pleads with additional particularity demand futility, perhaps due to its counsel's involvement as co-lead counsel in a previous shareholder derivative action initiated on behalf of Abbott in 1999, which resulted in settlement and corporate governance reforms after *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795 (7th Cir. 2003). Pipefitters fail to allege any facts concerning the citizenship of any of the individuals named as defendants in its Complaint, which also appears substantially similar to the complaints filed by Chester County and

8

Jacksonville. This factor militates in favor of Chester County and Jacksonville, weighing more heavily in favor of Jacksonville.

**CONCLUSION**

For the foregoing reasons, the Court appoints Jacksonville as lead plaintiff, Spector Roseman as lead counsel and Susman Heffner as local counsel.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 13, 2012