**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| IN RE ABBOTT DEPAKOTE | ) | Case No. 11-CV-08114 |
| SHAREHOLDER DERIVATIVE | ) | |
| LITIGATION | ) | Judge Virginia M. Kendall |
| | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF THE COURT'S JUNE 5, 2013 ORDER**

Plaintiffs' Opposition is long on rhetoric and hyperbole, but short on precedent or well-pled factual allegations responsive to defendants' arguments. The basis for defendants' motion is that the Court's decision reflects two manifest errors of law, in that the Second Amended Complaint does not contain particularized allegations that (1) illegal off-label marketing occurred throughout 2008, and (2) a majority of the board learned of such alleged misconduct at some point in 2008, but consciously abrogated their fiduciary duties by allowing it to continue.

On the first issue, the Court relied primarily on a recital in the Civil Settlement Agreement in which the government contended it had claims for conduct concerning the marketing of Depakote "between January 1998 and December 31, 2008." The Civil Settlement Agreement, however, does not contain any specific allegations of any illegal conduct occurring in 2008. Nor did plaintiffs' Second Amended Complaint add any particularized allegations of illegal conduct through the end of 2008. Absent any particularized allegations specific to 2008, it was clear error to conclude that plaintiffs adequately alleged illegal conduct occurred while a majority of the current board was serving. The Opposition cites no authority to the contrary.

On the second issue, the Court ruled that a document preservation letter and subsequent subpoena issued by the government in 2008 put the board on notice that illegal off-label marketing was occurring in 2008. Plaintiffs do not (and cannot) point to anything in the

preservation letter or the subpoena asserting that Abbott was engaged in illegal off-label marketing at that time. And courts repeatedly have held that receipt of a subpoena, absent some accompanying non-generalized allegation of wrongdoing, does *not* put directors on notice of illegal conduct. *See, e.g., In re Johnson & Johnson Deriv. Litig.,* 865 F. Supp. 2d 545, 568 (D.N.J. 2011). Moreover, and independently fatal, plaintiffs also failed to plead the particularized facts necessary to infer that the two directors who joined the board in 2008, even if on subsequent notice of alleged off-label marketing, consciously allowed it to continue. Plaintiffs thus failed to meet their burden to plead facts to overcome the heightened presumption that the outside directors constituting the majority of the board acted in good faith.

As explained in defendants' opening brief and further below, the Court's ruling on both issues departs from governing case law and Rule 23.1, which establish a heightened standard for demand futility to preserve the prerogative of the board to decide if and when claims belonging to the corporation should be asserted. Accordingly, reconsideration should be granted and the complaint dismissed for failure adequately to allege demand futility.

## ARGUMENT

Defendants recognize that a request for reconsideration must meet a high standard, and they did not bring this motion lightly. But defendants respectfully submit this case meets one of the recognized criteria for granting reconsideration – manifest error of law – in light of the gulf between the well established legal principles governing demand futility and the allegations on which the Court based its decision. *See, e.g.*, *Edward Gray Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 94 F.3d 363, 367-69 (7th Cir. 1996) (reversing district court's failure to grant motion for reconsideration based on manifest error of law); *Morningware, Inc. v. Healthware Home Prods., Inc.*, No. 09 C 4348, 2011 WL 1376920, at *2-3 (N.D. Ill Apr. 12, 2011) (granting motion for reconsideration because prior ruling conflicted with settled precedent); *Sunrise*

*Opportunities, Inc. v. Regier,* No. 05 C 2825, 2006 WL 581150, at *1, 4 (N.D. Ill. Mar. 7, 2006) (granting motion for reconsideration because prior ruling based on manifest error of law).[1]

Reconsideration is appropriate because the Court's ruling departs from precedent establishing the requisite "extraordinary conditions" under which a shareholder is permitted to usurp the authority normally entrusted to a board of directors to decide whether litigation is in a corporation's best interest. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95-96 (1991). The courts and Congress have imposed a heightened standard requiring a shareholder to establish with particularized factual allegations that a pre-suit demand on the board is excused as futile so as "to preserve the primacy of board decisionmaking regarding legal claims belonging to the corporation." *No. Miami Beach Gen. Emps. Ret. Fund v. Parkinson,* No. 10 C 6154, 2012 WL 4180566 at *4 (N. D. Ill. Sept. 19, 2012). Before a shareholder may circumvent this board authority, its complaint must allege particularized facts to overcome the presumption that directors act in good faith – a presumption heightened in cases, like this one, where a majority of a company's board is made up of independent, outside directors and the corporation's articles of incorporation include an exculpatory provision immunizing a director from liability for any breach of the duty of care. (6/5/13 Op. at 9-10).

Here, plaintiffs were required to allege particularized facts to establish that a majority of the board faces a substantial threat of personal liability for breaching their duty of loyalty. The

---

[1] Plaintiffs assert that any arguments previously raised cannot be the basis for reconsideration while at the same time any new arguments are waived (7/8/13 Resp. at 6) – in other words, that the moving party can neither say anything it has said before nor anything new. The basis for seeking reconsideration is that the Court committed manifest errors of law in ruling that the Second Amended Complaint alleged with particularity facts sufficient to overcome the strong presumption of good faith afforded to outside directors and to establish that a majority of Abbott's board faces a substantial risk of liability for an alleged breach of duty. Defendants necessarily are required to explain why the Court's ruling constitutes a manifest error of law. That defendants elaborate or explain in different words the points made in their original motion does not equate to raising new arguments.

majority of Abbott's board includes four outside directors who did not join the board until after 2009 and two outside directors who (a) were not on the board during 1998 - 2006, the years of conduct covered by Abbott's plea, and (b) served on the board for only six months, in the case of one director, and two months, in the case of the other, between the company's receipt of the subpoena (July 2008) and the date the purported misconduct is alleged to have ended (December 2008). To justify excusing demand, the Court necessarily was required to find *these two directors* face a substantial threat of personal liability. The Court breaks new ground finding plaintiffs have met their heightened burden to establish these two directors face a substantial threat of personal liability, based on (1) a non-particularized recital in the Civil Settlement Agreement, which does not admit to or allege specific misconduct during 2008, and (2) the company's receipt, in the year these two directors joined the board, of a document preservation notice and subpoena, which indicate an investigation is being conducted but do not allege ongoing illegal conduct.

I.      **The Court Committed A Manifest Error of Law Holding That A Civil Settlement Agreement's Recital Constitutes A Particularized Factual Allegation Of Wrongdoing.**

Plaintiffs cite no authority for the proposition that a court may rely on a recital contained in a Civil Settlement Agreement as a basis for pleading in other litigation that the settling defendant engaged in illegal conduct, particularly when the settling party has expressly denied any liability with respect to the contents of that recital. While the Court appropriately rejected plaintiffs' argument that Abbott's civil settlement was an admission, it nonetheless credited that generalized recital as a particularized factual allegation. Indeed, the addition of that recital to plaintiffs' allegations was a key reason why plaintiffs' Second Amended Complaint survived defendants' motion to dismiss. (6/5/13 Op. at 14)

4

There is no caselaw holding it appropriate to draw an inference of illegal conduct from a recital in a civil settlement agreement, and ample authority to the contrary. (*See* 6/17/13 Def. Mem. at 8-9)  Indeed, while plaintiffs describe cases such as *In re Rough Rice Commodity Litigation,* No. 11 C 618, 2012 WL 473091, at *1 (N.D. Ill. Feb. 9, 2012), as factually distinguishable, the reasoning and holding in that decision are squarely on point:  the court held that a plaintiff could not simply parrot statements in a government agency consent order to form the basis of their own claim, when the settlement with the government case contained no admission of wrongdoing.   2012 WL 473091, at *4-5.  That the *Rough Rice* court also found the plaintiff's claims failed because the consent order dealt with a different type of violation does not, as suggested by plaintiffs, diminish the applicability of the court's reasoning in any way.

Nor do the cases cited by plaintiffs stand for the proposition that a complaint can rely on statements made in a settlement agreement to form the basis of a particularized allegation.  In *ClearOne Commc'ns, Inc. v. Lumbermens Mut. Cas. Co.*, No. 2:04-CV-00119 TC, 2005 WL 2716297, at *8 n. 10 (D. Utah 2005), the court did not consider whether, much less hold that, a plaintiff could rely on statements in consent decrees as part of a complaint.  Rather, the court confirmed that it included the fact of the consent decrees only to further describe "part of the factual background of this case."  *Id.*  The consent decrees were not material to the court's decision.   Plaintiffs' other cited cases are similarly inapposite.  *See  Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 454 (S.D.N.Y. 2008) (holding that complaint could reference delisting letters described by defendants' own press releases as part of "factual background," but did not address settlement agreements or reliance on their recitals in complaints); *Johnson v. M & M Commc'ns. Inc.*, 242 F.R.D. 187, 190 (D. Conn. 2007) (refusing to strike findings of a state

investigation; the case did not address settlement agreements or use of their recitals in complaints).

Not only was the Court's reliance on the Civil Settlement Agreement's recital in error, but its decision to credit the generalized recital as a particularized allegation of specific misconduct in 2008 compounded the error. The Civil Settlement Agreement, contrary to plaintiffs' repeated claim, does not assert particularized allegations of wrongdoing; rather, it recites the government's broad contention it had claims for conduct "between January 1998 and December 31, 2008." (1/18/13 Mem., Ex. 5, Civil Settlement Agreement) A generalized assertion that the government has claims for conduct occurring over an almost eleven-year span does not allege with particularity illegal conduct occurring during 2008. *E.g., In re Johnson & Johnson,* 865 F. Supp. 2d at 568 (allegation in criminal complaint that J&J "engaged in illicit kickbacks from January 2002 through 2006" not a particularized allegation satisfying Rule 23.1).[2]

Had plaintiffs in their Second Amended Complaint simply pled the language recited in the Civil Settlement Agreement, without attribution, there can be no question that language would not constitute a particularized factual allegation of wrongdoing occurring in 2008. In their First Amended Complaint, plaintiffs alleged that "between 1998 and 2009," Abbott engaged in several "illegal marketing schemes" to convince physicians to market Depakote for unapproved uses, and that the "Relevant Period" of wrongdoing spanned fourteen years beginning in 1998, *i.e.,* through 2012. (*See* Doc. #179, 6/1/12 FAC ¶¶ 6-9, 116-17.) The Court appropriately gave no weight to these generalized allegations in deciding that plaintiffs had not sufficiently alleged

---

[2]    Notably, in its opinion granting the defendants' motion to dismiss plaintiffs' prior complaint, the Court observed that the government had thoroughly investigated Abbott's off-label marketing and would have included in the Agreed Statement of Facts any specific instances of conduct occurring after 2006. (11/15/12 Op. at 15)

off-label marketing occurred after a majority of the board joined in April 2007, the then-relevant date for demand futility purposes.  (11/15/12 Op. at 15-18)

The government's claim that Abbott's period of alleged wrongdoing spanned the period "between January 1998 and December 31, 2008" is no different than plaintiffs' previously dismissed allegations that Abbott illegally marketed Depakote "between 1998 and 2009" or engaged in a "14-year period of wrongdoing beginning in 1998."  The only difference is the identity of the person uttering the statement.  Plaintiffs' adoption of the government's non-particularized allegation cannot transform it into a particularized one.[3]  Nor should it be given any greater weight simply because the government, rather than plaintiffs, stated it in the first instance.

While plaintiffs contend that defendants ask the Court to disregard the inferences to which they claim they are entitled with respect to the Civil Settlement Agreement, plaintiffs are not entitled to such inferences.  Only reasonable inferences may be drawn, and only from particularized facts, not from conclusory allegations.  *Brehm v. Eisner,* 746 A.2d 244, 255-56 (Del. 2000) ("[C]onclusory allegations are not considered as expressly pleaded facts or factual inferences.").  The government's contention in the Civil Settlement Agreement that it had claims for conduct "between January 1998 and December 31, 2008" is not a particularized factual allegation, and thus it cannot serve as a basis to conclude that improper conduct occurred throughout 2008 or to reasonably infer that conduct specifically alleged to have occurred in earlier years continued unabated "through 2008."

---

[3]    Plaintiffs claim that allegations of wrongful conduct through the end of 2008 also arise from the *qui tam* actions, citing the Court's opinion.  (Resp. at 11 n.9)  All the Court stated there, however, was that the *qui tam* lawsuits alleged off-label marketing between 1998 and 2009, which is a non-particularized allegation.  (6/5/13 Op. at 3)  Plaintiffs cited the same allegations in the First Amended Complaint (11/15/12 Op. at 3), and the Court did not credit them as particularized allegations of misconduct through 2009.

## II. The Court Committed Manifest Error When It Concluded That Plaintiffs' Complaint Sufficiently Pled A Majority of Abbott's Board Knew Of Illegal Off-Label Marketing And Consciously Permitted Such Conduct To Continue.

Of the six directors comprising the majority of the relevant board, four joined after the end of 2008, are not named as defendants, and are not alleged to have breached their fiduciary duties in any way. They necessarily cannot face any risk of liability, much less a substantial risk. Plaintiffs do not contend otherwise.

A fifth independent, outside director joined the board in October 2008. (1/18/13 Mem., Ex. A) Plaintiffs have neither alleged nor articulated in their briefs any plausible basis for concluding that between October 2008 and the end of that year, that director (1) became aware the company was violating the law and (2) acted in bad faith by consciously causing or permitting the company to continue to violate the law. Accordingly, there is no basis to conclude this director faces a substantial threat of personal liability.

This leaves the sixth independent, outside director, who joined the board in January 2008. (*Id.*) Unless the Second Amended Complaint pleads with particularity sufficient facts to establish that director acted in bad faith by consciously causing or permitting Abbott to violate the law during 2008, plaintiffs have not alleged a basis for excusing demand on the ground that a majority of the board faces a substantial threat of liability. The Court committed clear legal error in concluding plaintiffs had done so.

### A. Plaintiffs Did Not Adequately Plead Facts From Which It Is Reasonable To Infer Director Knowledge Of Ongoing Wrongdoing.

The Court concluded it was reasonable to infer a majority of Abbott's directors had knowledge of wrongdoing based on the magnitude and duration of alleged Depakote off-label marketing and two newly alleged "red flags" — the Company's receipt of an April 2008 document preservation letter and a July 2008 subpoena. Both conclusions were manifest error.

*First*, in cases in which the courts found the magnitude and duration of wrongdoing to be sufficient to raise such an inference, the allegations established *both* that a majority of the board was on the board during most if not all of the period of wrongdoing *and* had actual knowledge of the wrongdoing.  Thus, in *In re Abbott,* the majority of the board served during the entire 6-year period of wrongdoing.  *In re Abbott Labs*., 325 F.3d 795, 809 (7th Cir. 2003).  Additionally, as this Court explained in dismissing plaintiffs' prior complaint, the *Abbott* plaintiff alleged facts showing the board had "*direct knowledge of the violations at issue*."  (11/15/12 Op. at 17) (emphasis added)  Similarly in *McCall*, a majority of the board served during the entire alleged period of wrongdoing and was alleged to have received regular audit reports containing "unmistakable signs that improper practices were being employed."  *McCall v. Scott,* 239 F.3d 808, 820 (6th Cir. 2001).  And in *Pfizer*, "a majority of the director defendants served on the board for a period that covers the dates of every 'red flag' alleged to have been brought to the Board's attention."  *In re Pfizer,* 722 F. Supp. 2d 453, 461 (S.D.N.Y. 2010).

Plaintiffs' Opposition does not address the key difference between the allegations in this case and those in prior cases relying on the magnitude and duration of wrongdoing as a basis to infer board knowledge of wrongdoing.  Nor have plaintiffs come forward with any authority that directors such as the two who joined the board less than a year before the putative misconduct is alleged to have ended, can be charged with actual knowledge of the wrongdoing that had occurred at the company prior to their board service.  There is no precedent for imputing to new directors knowledge of conduct that occurred years before they joined the board, as the Court correctly recognized when dismissing plaintiffs' original complaint.  (11/15/12 Op. at 10-11 (recognizing that directors "cannot be personally liable for conduct that occurred before they were appointed"))  Yet, by finding these two 2008 directors face a substantial risk of personal

liability, the effect of the Court's decision is to impute to them knowledge of conduct that occurred before they joined the board. This was legal error. *E.g., Morrone v. Erlich,* No. 09 C 1910, 2011 WL 1322085, at *6 (E.D.N.Y. Mar. 31, 2011) (directors "cannot be held liable for acts or omissions that occurred before they became affiliated with the Company.").

*Second*, and independently, the Court also erred when it concluded it was reasonable to infer "that the receipt of the document preservation letter and subsequent subpoenas from the DOJ put the board on notice that the alleged off-label marketing practices were occurring in 2008." (6/5/13 Op. at 18-19) Neither the Court's opinion, nor the Opposition, nor even the documents themselves, provide any plausible basis for this inference. The rationale stated by the Court was that plaintiffs have now alleged "that the illegal off-label marketing of Depakote persisted until at least December 31, 2008." (*Id.* at 20) But nothing in the document preservation letter or the subpoena would have informed the directors such off-label marketing still was occurring during 2008. Plaintiffs do not dispute that neither the preservation letter nor the subpoena contained any assertion of illegal conduct, let alone *ongoing* misconduct.[4]

Plaintiffs cite no authority supporting the proposition that a subpoena itself puts directors on notice of illegal conduct, and the only authority cited to the Court by either party is to the contrary, holding that while a subpoena or letter may indicate to board members that an investigation is ongoing, it does not convey, nor is it reasonable to infer the board gains

---

[4] Plaintiffs' Opposition states that the Court concluded that board's knowledge of off-label marketing had been sufficiently pleaded through the preservation letter and subpoenas and that "any other conclusion would be preposterous," (Resp. at 4). But plaintiffs misstate the Court's opinion. The Court's statement was that it was reasonable to infer that the Board had knowledge of the actual subpoenas, and not that knowledge of the subpoenas made it reasonable to infer knowledge of the underlying alleged wrongdoing or that it was continuing. (6/5/13 Op. at 19)

knowledge of, continued company wrongdoing.[5] *See Kococinski v. Collins,* Civil No. 12-633, 2013 WL 1197676 (D. Minn. Mar. 25, 2013), and *In re Johnson & Johnson*, 865 F. Supp. 2d at 566. The Second Amended Complaint does not allege any fact known in 2008 by the two directors who joined the board in 2008 that would support a plausible inference they were aware illegal conduct was occurring on their watch. Nor does the Court's opinion cite any such facts.

**B.      Plaintiffs Cannot Rely On An Assumption of Director Inaction To Satisfy Their Burden To Show A Substantial Threat Of Personal Liability For A Conscious Disregard of Duty.**

Plaintiffs do not plead with particularity what the two outside directors joining the board in 2008 did or did not do after the company's receipt of the July 2008 subpoena. Plaintiffs allege only that unspecified acts of off-label marketing occurred after the directors allegedly received notice of wrongdoing. The Court committed a manifest error of law when it concluded that plaintiffs sufficiently alleged a substantial risk of liability based on allegations that the directors learned of a subpoena, which on its face did not allege continuing wrongdoing, and thereafter off-label marketing continued for a short period of time.

Plaintiffs have cited no decision  — not one — holding that it is reasonable to infer the two outside directors who joined the board in 2008 (and without whom a majority of the board cannot even be claimed to be implicated) acted in dereliction of their duties when only a few

---

[5]    Plaintiffs avoid addressing these courts' conclusions that a board receiving a subpoena or investigatory letter is not placed on notice of continued wrongdoing. Instead, plaintiffs try to distinguish these cases by misstating the facts about who may have received the subpoena. Plaintiffs argue that *Kococinski* involved an investigatory letter that *may* have been shared with the board. (Resp. at 8 n.6)  To the contrary, in *Kococinski*, it was specifically alleged that a Senator sent an investigatory letter seeking information about potentially improper physician payments to the Chairman of the Board.  2013 WL 1197676, at *11.  Nonetheless, the court held that the letter was insufficient to place the board on notice that illegal conduct was actually occurring and only placed the board on notice that there was an investigation. *Id.*  Similarly, in *Johnson & Johnson*, the subpoena was directed to Johnson & Johnson itself, not a subsidiary as plaintiffs argue.  865 F. Supp. 2d  at 563, 565.  In any event, the identity of the entity receiving the subpoena is immaterial to the courts' reasoning — equally applicable here — that the subpoena only provided notice of an ongoing investigation, not notice that illegal conduct was occurring.

months passed after they allegedly received notice of potential company misconduct. To the contrary, as the *Johnson & Johnson* court recognized, "five months does not provide a sufficient basis for inferring that the directors engaged in the sort [of] egregious, conscious disregard of their duties." [6] 865 F. Supp. 2d at 567. Plaintiffs contend that this Court should disregard *Johnson & Johnson* because the underlying settlement agreement referenced in that case was between the government and another company that allegedly committed fraud with a Johnson & Johnson subsidiary. (Resp. at 10 n.8) But the *Johnson & Johnson* court held that even assuming this third-party settlement agreement suggested wrongdoing on the part of Johnson & Johnson, the five months that passed after it became effective and before the derivative lawsuit was filed was simply not enough to assume director inaction. 865 F. Supp. 2d at 572. In other words, the court assumed the settlement agreement placed the directors on notice of the subsidiary's wrongdoing and only then did it find that the mere passage of months was not enough to establish conscious disregard.[7]

Lacking any authority supporting their argument, plaintiffs erroneously contend they are entitled to an inference that the directors decided not to act during this short period of time. (Resp. at 4) But the Court may only draw "reasonable factual inferences that logically flow from

---

[6]     Plaintiffs attempt to argue that in *Johnson & Johnson*, the allegations establish that the directors immediately began acting to cooperate with the investigation. (Resp. at 10-11 (arguing that the company's *next* Form 10-K after it received the subpoena indicated company cooperation)) Plaintiffs misstate the allegations. There, the company received the government subpoena in September 2005, and in a Form 10-K for the period ending December 31, 2006 (in other words, the second 10-K after receipt of the subpoena), disclosed that subpoena and indicated the company was responding. 865 F. Supp. 2d at 565. Thus, over a year passed from when Johnson & Johnson disclosed the government subpoena in its case, similar to the time frame (from July 10, 2008 to 10-Q for the period ending September 30, 2009) present here. (Resp. at 10)

[7]     The *Johnson & Johnson* court likewise concluded, relying on the same logic and case law, that three months that passed after *qui tam* lawsuits alleging misconduct and filed directly against Johnson & Johnson (as opposed to its subsidiary) was not enough to infer that the "directors consciously chose, in bad faith, not to act." 865 F. Supp. 2d at 568.

the particularized facts alleged." *Brehm,* 746 A.2d at 255. *See also Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) ("[I]nferences that are not objectively reasonable cannot be drawn in the plaintiff's favor."). The Second Amended Complaint contains no allegations supporting a reasonable inference that the two 2008 directors, knowing Abbott was supposedly engaged in illegal conduct in 2008, consciously decided to allow that misconduct to continue. Although defendants produced to plaintiffs all board meeting materials discussing Depakote during 2008, plaintiffs have not alleged a single meeting at which these outside directors would have made a decision that could satisfy the *Aronson* standard. This omission is notable, for it is at board meetings that outside directors consider actions and make decisions.

Plaintiffs also argue the Court should reject defendants' argument that these defendants do not face a substantial risk of liability because defendants "have not pointed to a single thing that the Board did to investigate the Company's off-label marketing of Depakote after it received the preservation letter and subpoena." (Resp. at 9 (emphasis omitted)) This argument ignores the bedrock legal principle that corporate directors are *presumed* to have acted in good faith. (6/5/13 Op. at 9) The burden is not on the directors to justify their behavior; it is on plaintiff to allege with particularity facts that overcome this presumption. *Beam*, 845 A.2d at 1048-49 ("[D]irectors are entitled to a *presumption* that they were faithful to their fiduciary duties. In the context of presuit demand, the burden is upon the plaintiff in a derivative action to overcome that presumption.") (emphasis in original). Plaintiffs did not do this, and the Court erred in allowing *an assumption* that the directors decided not to act to substitute for the required particularized allegations from which a reasonable inference could be drawn that the directors either caused off-label marketing to occur or, knowing it was occurring, consciously permitted it to continue.

13

Finally, there is no basis for plaintiffs' assertion that defendants have waived this argument. Defendants repeatedly argued in support of their motion to dismiss the Second Amended Complaint that plaintiffs failed to allege with particularity facts establishing that the board "actually received notice of off-label marketing . . . and intentionally allowed it to continue." (1/18/13 Mem. at 7; *see also, e.g.*, *id.* at 11, 12, 16). Defendants' elaboration on this point in their reconsideration motion – including their argument that the passage of months does not constitute a particularized allegation of bad faith inaction – does not make it a new argument.

## CONCLUSION

For the foregoing reasons and those explained in defendants' opening brief, defendants respectfully request that the Court grant their motion for reconsideration.

Dated: July 15, 2013                               Respectfully submitted,

/s/ Daniel E. Reidy                                 /s/ Robert J. Kopecky

Daniel E. Reidy                                        Robert J. Kopecky
Brian J. Murray                                        Sallie G. Smylie, P.C.
JONES DAY                                             Sarah J. Donnell
77 West Wacker Drive                            KIRKLAND & ELLIS LLP
Chicago, IL  60601                                  300 North LaSalle Street
(312) 782-3939                                        Chicago, IL  60654
                                                             (312) 862-2000

*Attorneys for the Individual Defendants*     *Attorneys for Defendant Abbott Laboratories*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on July 15, 2013, he caused true copies of the foregoing **Defendants' Reply in Support of Motion for Reconsideration of the Court's June 5, 2013 Order** to be served upon all counsel of record using the Court's CM/ECF system.


<u>/s/ Robert J. Kopecky</u>