IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE ABBOTT DEPAKOTE | ) | No. 11 C 8114 |
| SHAREHOLDER DERIVATIVE LITIGATION | ) | |
| | ) | Judge Virginia M. Kendall |
| | ) | |

# MEMORANDUM OPINION AND ORDER

Lead Plaintiff Jacksonville Police & Fire Pension Fund, and plaintiffs Louisiana Municipal Police Employees Retirement System and Public School Retirement System of the School District of Kansas City, Missouri (collectively Plaintiffs) filed a second amended consolidated shareholder derivative action on behalf of nominal defendant Abbott Laboratories against the individual defendant directors of Abbott (the "Defendants") to remedy alleged breaches of their fiduciary duties. Plaintiffs assert that the breaches arose from the Defendants' knowing failure to exercise their oversight responsibility over Abbott's marketing practices with respect to its anticonvulsant drug, Depakote. Defendants moved to dismiss the Second Consolidated Verified Amended Shareholder Derivative Complaint for failure to adequately plead demand futility under Federal Rule of Civil Procedure 23.1. The Court denied that motion. The Defendants have moved the Court to reconsider its decision. For the reasons set forth below, the motion for reconsideration is denied.

## BACKGROUND

The facts of this are described in detail in the Court's November 12, 2012 and June 5, 2013 opinions and are incorporated herein by reference. *See In re Abbott Depakote Shareholder Derivative Lit.* ("*Depakote I*"), 909 F. Supp. 2d 984, 989-91 (N.D. Ill. 2012); *In re Abbott Depakote Shareholder Derivative Lit.* ("*Depakote II*"), No. 11 C 8114, 2013 WL 2451152, at *1-

1

4 (N.D. Ill. June 5, 2013). The Court issued a Memorandum Opinion and Order on June 5, 2013 that denied the Defendants' motion to dismiss the Second Amended Complaint. The June 5th Order found that the Plaintiffs adequately alleged demand futility for purposes of meeting the requirements of Rule 23.1. The Defendants have now moved for the Court to reconsider that Order.

## **LEGAL STANDARD**

Motions for reconsideration are extraordinary in nature and are viewed with disfavor. *See, e.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 11185, 1191 (7th Cir. 1990); *see also Marmi E. Graniti D'Italia Sicilmarmi S.p.A. v. Universal Granite and Marble,* 757 F. Supp. 2d 773, 781 (N.D. Ill. 2010). A motion for reconsideration is not an appropriate vehicle for relitigating arguments that the court previously rejected or for arguing issues that could have been raised during the consideration of the motion presently under reconsideration. *See Caisse Nationale de Credit Agricole v. CBI Industries, Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996); *Musch v. Domtar Industries, Inc.,* 587 F.3d 857, 861 (7th Cir. 2009); *Sigsworth v. City of Aurora,* 487 F.3d 506, 512 (7th Cir. 2007) (internal citation omitted). As a result, they are appropriate only: (1) where a court has misunderstood a party; (2) where the court has made a decision outside the adversarial issues presented; (3) where the court has made an error of apprehension; (4) where a significant change in the law has occurred; or (5) where significant new facts have been discovered. *See Broaddus v. Shields,* 665 F.3d 846, 860 (7th Cir. 2011) (citing *Bank of Waunakee,* 906 F.2d at 1191). Indeed "[a] motion to reconsider is frivolous if it contains no new evidence or arguments of law that explain why the [court] should change an original order that was proper when made." *Magnus Electronics, Inc. v. Masco Corp. of Indiana,* 871 F.2d 626, 630 (7th Cir. 1989).

**DISCUSSION**

The Defendants' original motion to dismiss and the motion for reconsideration contend that Plaintiffs failed to establish demand futility under Fed. R. Civ. P. 23.1 because they failed to allege particularized facts demonstrating that at least half of the directors faced a substantial threat of personal liability for failing to exercise their oversight duties. The Defendants argue that the Court's decision to the contrary was erroneous because: (1) the Court erred in relying on the Civil Settlement Agreement Abbott entered into with the Government in determining the Plaintiffs adequately alleged that the off-label marketing scheme continued through at least 2008; and (2) it incorrectly found the majority of the Board had notice of the scheme. These arguments are unpersuasive.

The Defendants first argument does not demonstrate that the Court misunderstood the Defendants or made a decision outside the adversarial issues presented. Nor does it identify controlling precedent, a significant change in the law or significant new facts that the Court failed to consider. Instead, Defendants' argument simply attacks the Court's reasoning in reaching its decision. This is an improper basis for a motion for reconsideration and may be rejected summarily. *See Caisse Nationale de Credit Agricole,* 90 F.3d at 1270 (holding that motions for reconsideration do not provide an opportunity to litigate previously rejected arguments).

Indeed, not only is Defendants' argument inappropriate but it misconstrues the Court's June 5th Order. The Court did not rely on the Civil Settlement Agreement in determining that Plaintiffs adequately alleged the existence of an off-label marketing scheme that occurred while a majority of the Board served as directors. The Second Amended Complaint contains numerous particularized allegations of fraudulent conduct that occurred while a majority of the Board

3

served. For example, the Complaint alleged that "Abbott's LTC Sales Force developed a core marketing strategy of identifying 'key opinion leaders,' who were physicians who would influence their peers' medical practice and especially their prescription habits. From 1998 through at least December 31, 2008, Abbott provided these 'key opinion leaders' with a multitude of improper and illegal kickbacks, including sports tickets, dinners, golf outings, speaker honoraria, and long term consulting agreements. In exchange for these kickbacks, the 'key opinion leaders' would provide advocacy and key market feedback and activities in support of Abbott's Depakote Products." Doc. 220 at ¶ 166; *see also, e.g.,* ¶ 192 ("from 1998 through at least December 31, 2008, Abbott also engaged in unlawful 'detailing' of its Depakote Products . . . [a]s part of their effort to increase sales of Depakote products, Abbott's LTC Sales Force engaged in numerous off-label detailing activities including 'lunch 'n learns,' breakfasts, dinner meetings, preceptorships, grand rounds, mini-fellowships, and in-service training for the purpose of disseminating Depakote Products"); ¶ 276 ("Abbott trained sales representatives to market Depakote for comorbidities not approved by the FDA, such as seizures combined with aggression, bipolar disorder and substance abuse, bipolar mania and dementia, and bipolar mania and high cholesterol. Indeed, Relator Dietzler [an Abbott sales representative] documented multiple instances in which presentations and speaking engagements were organized to promote Depakote's usage for comorbidities at least through 2008. These involved, for instance, using Depakote for treating epilepsy combined with behavioral issues, depression, or dementia.").

Moreover, pleading with particularity does not mean the Plaintiffs must allege the specific date that each act of fraud occurred. *See, e.g., Mason v. Medline Indus., Inc.,* 731 F. Supp. 2d 730, 735 (N.D. Ill. 2010) ("A plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every

4

instance of fraud, but he must provide representative examples."); *United States v. Ortho-McNeil Pharms., Inc.,* No. 03 C 8239, 2007 WL 2091185, at *3 (N.D. Ill. July 20, 2007) (same). Plaintiffs provided the requisite representative examples here. *See, e.g.,* Doc. 220 at ¶ 176 (alleging that Abbott used continuing medical education programs to promote the application of Depakote for off-label purposes, "[f]or instance, through grant monies provided by Abbott, ABcomm sponsored on online CME seminar, *in force through November 11, 2009,* titled 'An Evidence-Based Approach to Treating Behavior Disturbances & Seizure Patients.' The purpose of this presentation, which was directed to physicians, nurse practitioners, and pharmacists, was to promote Depakote products off-label – specifically, to 'compare and contrast antiepileptic drugs based on safety and efficacy profiles, as well as drug interactions, in older patients who often have complicated drug regimens.'") (emphasis added); ¶ 261 ("In June 2008 . . . [an Abbott] district sales manager Jennifer Mortale forwarded a voicemail to Relator Dietzler and other sales representatives in which an Abbott sales representative recounted his success in persuading an epileptologist to switch a patient from two antipsychotic drugs to Depakote ER only. Mortale forwarded this voicemail as a 'success story' about off-label marketing of Depakote for comorbidities."). Therefore, since the Second Amended Complaint contains sufficient particularized allegations of fraud that occurred while a majority of the Board served as directors, Defendants' first argument provides no basis for reconsideration.

The importance of the Civil Settlement Agreement to the Court's decision in *Depakote II* was that it rebutted a presumption the Court relied on in granting the motion to dismiss in *Depakote I.* In both opinions, the Court held that the Plaintiff made a substantial number of particularized allegations regarding illegal practices that occurred at Abbott that were sufficient to establish demand futility. In *Depakote I,* the Court did not consider these allegations because

it found the allegations were specifically tied to the Agreed Statement of Facts set forth in the criminal plea agreement entered into between the Government and Abbott. This plea agreement limited the period of relevant conduct to between 1998 and 2006. In particular, the Court held that:

> The Agreed Statement of Facts is not a flag that impermissible activity continued after the covered period. The reasonable inference is the opposite. The Government investigated Abbott's conduct and concluded that the off-label marketing practices ceased in 2006. If they did not, the Government would have charged that conduct and it would have appeared in the Agreed Statement of Facts. Accordingly, the Court disregards these alleged facts in determining whether demand is excused.

*Depakote I,* 909 F. Supp. 2d at 996. In other words, *Depakote I* held that Plaintiffs' allegations were implausible because the plea agreement specifically defined the period of relevant conduct.

However, *Depakote II* determined that this conclusion was no longer accurate based on the contents of the Second Amended Complaint and the Civil Settlement Agreement. The Civil Settlement Agreement specifically states that "[t]he United States contends that it and the Medicaid Participating States have certain civil claims against Abbott . . . for engaging in the following conduct concerning the marketing, promotion and sale of Depakote between January 1998 and December 31, 2008." Doc. 226-5 at 3. This conduct included that Abbott illegally marketed Depakote in an off-label manner: (1) to healthcare providers in nursing homes for the control of agitation and aggression in dementia patients; and (2) for the treatment of schizophrenia. Based on this, the Court could no longer find Plaintiff's allegations to be implausible because the off-label marketing scheme was only charged to have occurred through 2006 in the plea agreement. Therefore, since the Court was required to credit the Plaintiffs' statements as true at the motion to dismiss stage and grant them every reasonable inference, it

was now plausible that the scheme continued through at least 2008 based on the allegations in the Complaint.

The Defendants' concern that "the Court's disposition raises the prospect that negotiated resolutions between corporate defendants and the government will be significantly discouraged"[1] is also unwarranted. First, the Plaintiffs in this case, just like any other case, cannot use the settlement agreement to establish liability. *See* Fed. R. Evid. 408. Second, as described above, the Court did not rely on the settlement agreement in finding that the Complaint contained particularized allegations that Abbott's fraud occurred while a majority of the Board served as directors. Rather, the information contained in the settlement agreement simply dictated that it was plausible the scheme continued in a period not covered by a separate plea agreement. Finally, if a settlement agreement is in the best interests of a corporation, the officers and directors of that corporation are obligated as fiduciaries to pursue settlement regardless of whether they face potential liability in the future. Accordingly, these concerns do not dictate a different result.

Defendants' additional argument that this Court should reconsider its previous order is similarly improper and unpersuasive. Defendants contend that the Court committed manifest error in finding the Plaintiffs sufficiently alleged that a majority of the 2012 Board had knowledge of the wrongful conduct. The Court found that the Plaintiffs sufficiently alleged Board knowledge because: (1) there was a scheme of substantial magnitude and duration that allegedly occurred when a majority of the Board had been appointed as directors; (2) the Department of Justice sent a letter to Abbott informing it to preserve all documents relating to the marketing of Depakote; and (3) the DOJ issued subpoenas regarding the marketing of Depakote. Defendants failed to show that any of these reasons constitute a manifest error of law.

---

[1] *See* Doc. 243 at 9.

For example, the Defendants do not cite controlling precedent holding that a scheme of substantial magnitude and duration is insufficient to show Board knowledge. Instead, they "respectfully disagree that board notice can be inferred"[2] in this instance. This is not a basis for reconsideration. The Court's Order is not a brief that is subject to refutation and it is inappropriate for the Defendants to file a motion for reconsideration merely because they disagree with the Court. *See Caisse Nationale de Credit Agricole,* 90 F.3d at 1270. Since the Defendants merely rehash the arguments the Court previously considered and rejected, there is no basis for reconsideration and the motion is denied.

## **CONCLUSION**

For the reasons set forth above, the Defendants' motion for reconsideration is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 9/12/2013

---

[2] *See* Doc. 243 at 12, n. 3.