# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

```
------------------------------------------------------------------------x
IN RE ABBOTT-DEPAKOTE SHAREHOLDER        :
DERIVATIVE LITIGATION                     :      CASE NO: 1:11-cv-08114
                                          :      Hon. Virginia M. Kendall
------------------------------------------------------------------------x
```

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Stipulation"), dated March 6, 2014, is entered into, by and through their respective undersigned counsel, by: (a) Lead Plaintiff Jacksonville Police & Fire Pension Fund ("Lead Plaintiff"); (b) nominal defendant Abbott Laboratories ("Abbott" or the "Company"); and (c) Miles D. White, Robert J. Alpern, Roxanne S. Austin, W. James Farrell, H. Laurance Fuller, William A. Osborn, Samuel C. Scott, III, Glenn F. Tilton, Duane L. Burnham, Jeffrey Leiden, and William G. Dempsey (the "Individual Defendants"; collectively, with Abbott, the "Settling Defendants") (Lead Plaintiff and the Settling Defendants are referred to collectively herein as the "Settling Parties"). This Stipulation is intended by the Settling Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Released Claims (as defined herein) and the Consolidated Derivative Actions (as defined herein) in accordance with the terms and conditions set forth below, subject to the approval of the United States District Court for the Northern District of Illinois (the "Court"), pursuant to Federal Rule of Civil Procedure 23.1.

**WHEREAS:**

### HISTORY OF THE LITIGATION AND SETTLEMENT PROCESS

A.      Between November 2011 and April 2012, seven (7) separate shareholder actions

were filed in this Court derivatively on behalf of Abbott against members of Abbott's Board of Directors, former directors, and certain current and former officers of the Company: *Chester County Employees Retirement Fund v. White, et al.*, No. 1:11-cv-08114; *Jacksonville Police & Fire Pension Fund v. White, et al.*, No. 1:11-cv-08383; *Pinchuck, et al. v. White, et al.*, No. 1:11-cv-08499; *Louisiana Municipal Police Employees' Retirement System v. White, et al.*, No. 1:11-cv-08631; *Pipefitters Local Union 537 Pension Fund v. White, et al.*, No. 1:11-cv-08886; *Public School Retirement System of The School District of Kansas City, Missouri v. White, et al.*, No. 1:12-cv-00355; and *Pipefitters Local Union No. 120 Pension Fund v. White, et al.*, No. 1:12-cv-02624. Those actions were all consolidated before this Court as *In re Abbott-Depakote Shareholder Derivative Litigation* (the "Consolidated Derivative Actions")*,* and the Court appointed Jacksonville Police & Fire Pension Fund as Lead Plaintiff, and Spector Roseman Kodroff & Willis, P.C. as Lead Counsel ("Lead Counsel").

B.   Two shareholder derivative actions were filed in the Circuit Court of Lake County, Illinois: *Patricia Goodman v. White, et al.*, No. 11CH5243, and *William Bojan v. White, et al.*, No. 11CH5498, and in November 2013, an eighth shareholder derivative action was filed in this Court: *Montini Family Trust v. White, et al.*, No. 1:13-cv-08187 (these actions being collectively referred to as the "Derivative Actions").

C.   The Consolidated Derivative Actions and Derivative Actions allege that the Individual Defendants breached their fiduciary duties by causing or allowing Abbott to engage in alleged improper marketing and sales activities for the drug Depakote. According to the Consolidated Derivative Actions and Derivative Actions, several *Qui Tam* actions were filed as well as litigation by the U.S. Government and a number of States, which the Company settled by, *inter alia*, payment of damages and penalties for amounts totaling approximately $1.6

2

billion.

D.      Following consolidation of the Consolidated Derivative Actions, Lead

Plaintiff filed a Consolidated Verified Amended Shareholder Derivative Complaint, which

the Court dismissed with leave to amend by Order dated November 15, 2012.  Lead Plaintiff

then filed a Second Consolidated Verified Amended Shareholder Derivative Complaint ("Second

Amended Complaint") on December 6, 2012.  By Order dated June 5, 2013, the Court denied

Abbott and the Individual Defendants' motion to dismiss the Second Amended Complaint and

held that Lead Plaintiff had alleged with sufficient specificity that demand upon Abbott's Board

should be excused as futile.  The Court subsequently denied Abbott's and the Individual

Defendants' motion for reconsideration by Order dated September 12, 2013.

E.      Beginning in late August 2013, the Settling Parties began to engage in discussions

relating to a possible settlement of the Consolidated Derivative Actions.  An extensive settlement

process of arm's-length negotiations occurred between August 2013 and January 2014, including

five in-person meetings at the offices of counsel for the Settling Defendants in Washington, DC,

as well as sixteen telephonic meetings.  During this period, the Settling Parties undertook highly

detailed negotiations regarding corporate governance and compliance issues, with Lead Plaintiff

assisted by two experts.  The Settling Parties did not conduct any discussions as to the payment

of attorneys' fees or expenses prior to having reached an agreement as to the terms of the

Settlement and the corporate governance provisions set forth in Exhibit A.

F.      Once the Settling Parties had reached an agreement in principle on the terms of

the Settlement, Lead Plaintiff conducted confirmatory discovery to confirm the fairness and

reasonableness of the Settlement and whether it is in the best interests of Abbott and its

shareholders.  Based on the confirmatory discovery as well as its ongoing investigation and

analysis, Lead Plaintiff concluded that settlement of the Consolidated Derivative Actions under the terms outlined in the Settlement was in the best interests of Abbott.

## THE SETTLING DEFENDANTS' DENIAL OF WRONGDOING

G.     The Settling Defendants have denied and continue to deny each and every one of the claims and contentions alleged in the Consolidated Derivative Actions. The Settling Defendants also have denied and continue to deny all allegations that Abbott has suffered damage by or as a result of the conduct alleged in the Consolidated Derivative Actions with respect to the Settling Defendants. In order to eliminate the burden, expense, and risks inherent in the litigation, the Settling Defendants have determined that it is desirable that the Consolidated Derivative Actions be settled in the manner and upon the terms and conditions set forth herein.

H.     Neither this Stipulation, nor any of its terms or provisions, nor entry of the Judgment (as defined herein), nor any document or exhibit referred or attached to this Stipulation, nor any action taken to carry out this Stipulation may be construed as or may be used as evidence of the validity of any of the Released Claims or an admission by or against the Settling Defendants of any fault, wrongdoing or concession of liability whatsoever in any other civil, criminal, or administrative proceeding.

I.     Neither this Stipulation nor the attached exhibits shall be offered or received into evidence in any action or proceeding in any court or other tribunal for any purpose whatsoever other than to enforce the provisions of this Stipulation, except that this Stipulation and the attached exhibits may be used as evidence of the Settlement in any action against the Released Parties to support a defense of *res judicata*, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense.

**THE DERIVATIVE CLAIMS AND THE BENEFITS OF SETTLEMENT**

J.      Based on their review and analysis of the relevant facts, allegations, defenses, and controlling legal principles, as described above, the Settling Parties believe that the Settlement set forth herein confers substantial benefits upon and is in the best interests of Abbott and its shareholders. The Settling Parties have agreed to settle pursuant to the terms and provisions of this Stipulation after considering, *inter alia*, the substantial benefits that Abbott will receive.

K.      Although Lead Plaintiff believes that the Consolidated Derivative Actions have substantial merit, Lead Plaintiff and its counsel recognize and acknowledge the expense and length of time that would be required to prosecute the Consolidated Derivative Actions through trial and appeal.  Lead Plaintiff and its counsel have also taken into account the uncertain outcome and the significant risks of litigating the Consolidated Derivative Actions, as well as the difficulties and delays inherent in such litigation and in the prospects for recovery.

L.      The Settling Parties acknowledge that the Consolidated Derivative Actions have been filed, commenced, and prosecuted by Lead Plaintiff and defended by the Settling Defendants in good faith and with adequate basis in fact and law under Federal Rule of Civil Procedure 11, and that the Consolidated Derivative Actions are being voluntarily released and settled based on the advice of counsel.

M.      Lead Plaintiff and the Settling Defendants acknowledge and agree that the Consolidated Derivative Actions filed and prosecuted by Lead Plaintiff and the negotiations leading to this Settlement were a substantial factor in the decisions by the Settling Defendants to maintain or adopt the corporate governance provisions set forth in Exhibit A. The corporate governance provisions provide a material benefit to the Company, including the prevention and/or detection of potential violations of law, regulation and/or Company policy.

5

**NOW, THEREFORE,** without any admission or concession on the part of Lead Plaintiff of any lack of merit of the Consolidated Derivative Actions whatsoever, and without any admission or concession on the part of the Settling Defendants as to the merits of the Consolidated Derivative Actions or Derivative Actions or as to any liability or wrongdoing whatsoever,

**IT IS HEREBY STIPULATED AND AGREED,** by and among the Settling Parties, through their respective counsel that, subject to the approval of the Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, in consideration of the mutual agreements and benefits flowing to the Settling Parties from the Settlement set forth herein, the Released Claims shall be fully, finally and forever compromised, resolved, discharged, settled, and released, and the Consolidated Derivative Actions shall be dismissed with prejudice, upon and subject to the following terms and conditions:

## 1. DEFINITIONS

As used in this Stipulation, the following terms have the meanings specified below:

1.1. "Abbott Shareholders" means any Persons (other than Abbott and the Individual Defendants) who currently own Abbott common stock.

1.2. "Agreed Upon Term" means the term of the obligations expressed in the Corporate Governance Terms attached hereto as Exhibit A. The Agreed Upon Term shall be four years from the Effective Date.

1.3. "Consolidated Derivative Actions" means each and all of the actions filed in the United States District Court for the Northern District of Illinois and pending as *In re Abbott-Depakote Shareholder Derivative Litigation*, 1:11-cv-08114. 1.4. "Derivative Actions" means the actions filed in the Circuit Court of Lake County, Illinois: *Patricia Goodman v. White, et al.*,

No. 11CH5243, and *William Bojan v. White, et al.*, 11CH5498, and the shareholder derivative action filed in the United States District Court for the Northern District of Illinois: *Montini Family Trust v. White, et al.*, 1:13-cv-08187. In the event the *Montini Family Trust* action is consolidated with *In re Abbott-Depakote Shareholder Derivative Litigation*, the *Montini Family Trust* action shall be deemed an action falling within the definition of "Consolidated Derivative Actions."

1.5.    "Effective Date" means the date upon which the Judgment approving the Settlement in accordance with this Stipulation becomes Final as a matter of law and is no longer subject to appellate review.

1.6.    "Final" means the latest of: (a) the expiration of the time for the filing or noticing of any motion for reconsideration or appeal of the Judgment; (b) the final affirmance of the Judgment on an appeal or after reconsideration, the expiration of the time for a petition, or a denial of any petition, to review the affirmance of the Judgment on appeal or, if such petition is granted, the final affirmance of the Judgment following review pursuant to that grant; or (c) the final dismissal of any appeal from the Judgment or the final resolution of any proceeding to review any appeal from the Judgment without any material change to the Judgment. Any proceeding or order, or any appeal or petition for a review of a proceeding or order, pertaining solely to any application for or award of attorneys' fees or expenses shall not in any way delay or preclude the Judgment from becoming Final.

1.7.    "Individual Defendants" means Miles D. White, Robert J. Alpern, Roxanne S. Austin, W. James Farrell, H. Laurance Fuller, William A. Osborn, Samuel C. Scott, III, Glenn F. Tilton, Duane L. Burnham, Jeffrey Leiden, and William G. Dempsey.

1.8. "Judgment" means the Final Order and Judgment entered by the Court in a form substantially similar to the Proposed Final Order and Judgment attached hereto as Exhibit B.

1.9. "Person" means an individual, business or legal entity, including any corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.10. "Lead Plaintiff" means Jacksonville Police & Fire Pension Fund.

1.11. "Lead Plaintiff's Counsel" means Spector Roseman Kodroff & Willis, P.C., appointed as Lead Counsel by this Court by Order dated April 13, 2012.

1.12. "Preliminary Approval Order" means the order entered by the Court in a form substantially similar to the Proposed Preliminary Approval Order attached hereto as Exhibit C.

1.13. "Released Claims" means any and all claims, demands, rights, remedies, causes of action or liabilities, whether based on federal, state, local, statutory, common or foreign law or any other law, rule, regulation, or principle of equity, whether known or unknown, including without limitation Unknown Claims (defined below in ¶1.22), whether suspected or unsuspected, whether contingent or non-contingent, whether accrued or unaccrued, whether or not concealed or hidden, whether factual or legal, and for any remedy whether at equity or law, that were or that could have been asserted from the beginning of time to the date of the entry of the Final Order and Judgment in any forum by Abbott or any Abbott shareholder claiming in the right of, or on behalf of Abbott, against any of the Released Parties and any other individual named or unnamed, that relate to, arise out of, or in any way are based upon, directly or indirectly, in any way, the drug Depakote or any of its derivatives, or the sales, marketing or any other practices or

8

activities with respect to Depakote or any of its derivatives, including any of the facts, allegations, transactions, events, occurrences, acts, disclosures, statements, omissions, failures to act, or matters set forth, referred to, or alleged in the Consolidated Derivative Actions or Derivative Actions, or that arise out of or in any way relate to the resolution of the Consolidated Derivative Actions or Derivative Actions, including this Stipulation and any actions or inactions relating thereto.

1.14.   "Released Parties" means all Settling Defendants, each and all individuals named or could have been named in the Consolidated Derivative Actions and Derivative Actions including those identified in Attachment A, and each and all members of their families, parent entities, affiliates, or subsidiaries, and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries and assigns.

1.15.   "Releasing Parties" means Lead Plaintiff (individually, and derivatively on behalf of Abbott), Abbott and Abbott Shareholders, and each and all members of their families, parent entities, affiliates, or subsidiaries, and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries, and assigns, and all Persons acting in concert with any of the aforementioned persons and entities.

1.16.   "Settlement" means the agreement made and entered into by and among the Settling Parties and set forth in this Stipulation.

1.17. "Settlement Hearing" means the hearing the Settling Parties will request that the Court hold after publication of the Settlement Notice in order to consider and determine, among other things, whether the Settlement should be approved, whether Judgment should be entered dismissing the Consolidated Derivative Actions with prejudice, and whether Lead Plaintiff's Counsel's requested attorneys' fees and expenses should be awarded.

1.18. "Settlement Notice" means the notice of the Settlement that will be filed by Abbott with the United States Securities and Exchange Commission in a Form 8-K and maintained on Abbott's website until the date the Court enters Judgment approving the Settlement, substantially in the form attached hereto as Exhibit D.

1.19. "Settling Defendants" means, collectively, the Individual Defendants and Abbott Laboratories.

1.20. "Settling Parties" means Lead Plaintiff and Settling Defendants.

1.21. "Summary Notice" means the summary form of the Settlement Notice to be published in national editions of *The Wall Street Journal* and *USA Today* pursuant to the Preliminary Approval Order, substantially in the form attached hereto as Exhibit E.

1.22. "Unknown Claims" means any Released Claims that any Releasing Party does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties that, if known by him, her, or it might have affected his, her, or its settlement with, and release of, the Released Parties, or might have affected his, her, or its decision not to object to this Settlement, including claims based on the discovery of facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the Released Claims. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Settling Parties shall expressly waive, and each other Abbott shareholder and

each of the Released Parties shall be deemed to have waived, and by operation of the Judgment shall have expressed waived, any and all provisions, rights and benefits conferred by Cal. Civ. Code § 1542, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." The Releasing Parties shall be deemed by operation of the Judgment to have acknowledged that the release of Unknown Claims was separately bargained for and is a key element of the Settlement.

## 2. SETTLEMENT OF THE CONSOLIDATED DERIVATIVE ACTIONS

In settlement of and as a result of the Consolidated Derivative Actions, the Settling Defendants agree, subject to the Court entering Judgment approving this Settlement, to each of the following:

2.1     Corporate Governance and Compliance Relief:     For the Agreed Upon Term, Abbott will maintain its commitment to the effective implementation of the provisions set forth in the Corporate Governance Terms attached as Exhibit A hereto.

2.2.     Funding:     Abbott agrees that for the Agreed Upon Term, it will commit from its treasury all funds necessary to implement the provisions set forth in the Corporate Governance Terms attached as Exhibit A hereto.

2.3.     Term of Agreement:     Any and all forward-looking provisions of this Settlement, including all of the provisions set forth in Exhibit A hereto, shall terminate four years from the the date the Court enters Judgment approving the Settlement. Subject to Board approval as necessary, Abbott shall reassess the processes implemented under the Agreement after four years to determine whether to continue or modify them.

2.4     None of the terms, agreements or modifications set forth in paragraphs 2.1, 2.2, 2.3, or Exhibit A shall be deemed to be an admission that Abbott's prior board and corporate governance policies and procedures were deficient.

## 3.   APPROVAL PROCESS

3.1     Promptly following the execution of this Stipulation by all Settling Parties, the Settling Parties shall submit this Stipulation, together with its Exhibits, to the Court and shall apply for entry of a Preliminary Approval Order, substantially in the form of Exhibit C attached hereto, that: (a) preliminarily approves the Settlement set forth in this Stipulation; (b) sets a date for the Settlement Hearing; (c) approves the form and content of the Settlement Notice and the Summary Notice; and (d) preliminarily enjoins the Releasing Parties from commencing, instituting, or prosecuting any of the Released Claims.

3.2     Upon entry of a Preliminary Approval Order, the Settling Defendants shall cause the Settlement Notice to be published to Abbott Shareholders in a manner ordered by the Court. The Settling Parties shall recommend that the Court order that notification be effected by Abbott by:   (a) filing a Form 8-K with the Securities and Exchange Commission that attaches the Settlement Notice; (b) publishing the Summary Notice in national editions of *The Wall Street Journal* and *USA Today*; and (c) placing the Settlement Notice on its website.   The Settlement Notice shall advise Abbott Shareholders of the terms of the Settlement of the Derivative Claims, the time and date of the Settlement Hearing, and Lead Plaintiff's Counsel's request for attorneys' fees and expenses.   The Settlement Notice shall be substantially in the form attached hereto as Exhibit D.   The Settling Defendants shall cause the Summary Notice, substantially in the form attached hereto as Exhibit E, to be effected in the manner ordered by the Court not later than ten (10) days following entry of the Preliminary Approval Order.

3.3     The Settling Defendants shall be responsible for all costs incurred in connection with the publication of the Settlement Notice and the Summary Notice.

3.4     The Settling Parties shall request that, on or about forty-five (45) days after notice of the Settlement is made and the time for objections past, the Court hold a Settlement Hearing to consider and determine: (a) whether to approve the Settlement; (b) whether Judgment should be entered dismissing the Consolidated Derivative Actions with prejudice, each party to bear his, her, or its own costs; (c) whether permanently to bar and enjoin the Releasing Parties from litigating any of the Released Claims; and (d) whether to approve an award of attorneys' fees and expenses for Lead Plaintiff's Counsel.

## 4.  RELEASE OF CLAIMS

4.1     Upon the Effective Date, each of the Releasing Parties on behalf of himself, herself, or itself, and each and all members of his, her and/or its families, parent entities, affiliates, or subsidiaries, and each and all of his, her and/or its respective past, present, or future officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries and assigns shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever compromised, resolved, discharged, settled, and released all Released Claims as against the Released Parties; and will be forever barred and enjoined from commencing, instituting, or prosecuting any of the Released Claims.

4.2     Upon the Effective Date, each of the Settling Defendants, on behalf of himself, herself, or itself and each and all members of his, her, and/or its families, parent entities, affiliates, or subsidiaries, and each and all of his, her and/or its respective past, present, or future

13

officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries and assigns shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever compromised, resolved, discharged, settled, and released the Releasing Parties and Lead Plaintiff's Counsel from all claims or demands relating to, arising out of, or connected with the institution, prosecution, assertion, settlement, or resolution of the Consolidated Derivative Actions and/or the Released Claims.

4.3     Pending the Judgment becoming Final, the Releasing Parties are barred and enjoined from commencing, prosecuting, instigating, continuing, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any of the Released Parties or challenging the Settlement other than in this action in accordance with the procedures established by the Court (the "Injunction").   If any action is taken by any Releasing Party in violation of the Injunction, Lead Plaintiff, if requested, shall join in any motion and shall otherwise use their reasonable best efforts to effect a withdrawal, dismissal, transfer or stay of such action.

## 5.  LEAD COUNSEL'S ATTORNEYS' FEES AND EXPENSES

5.1     Lead Plaintiff's Counsel will apply to the Court for an award of $9,900,000 which will cover Lead Plaintiff's attorneys' fees, expenses and costs and those of any other counsel in the prosecution of the Consolidated Derivative Actions.   This amount was the subject of extensive negotiations which were initiated only after the other terms of the Settlement were reached.   The Settling Defendants will not oppose the application of Lead Plaintiff's Counsel nor make any statement or comment criticizing, disparaging, or calling it into question.   Settling

Defendants further agree not to object to the payment to Lead Counsel of Court-approved attorneys' fees and expenses in accordance with this Agreement within twenty one (21) calendar days after the entry of any order awarding attorneys' fees and expenses, including the Fee and Expense Order, or Abbott's receipt of any required federal and state income tax forms from Lead Plaintiff's Counsel, whichever occurs later, subject to the following condition: if the Court's award of fees and expenses is vacated, reversed, or reduced on or as a result of an appeal, Lead Counsel shall, within twenty one (21) business days after such *vacatur*, reversal, or reduction, make a refund to the Settling Defendants in cash by wire transfer(s) in the full amount received or such lesser amount as provided for by such *vacatur*, reversal, or reduction, with interest. The interest rate applicable to any refund made to the Settling Defendants pursuant to this Paragraph shall be the prime rate as published on the date Lead Counsel is required to refund the monies.

5.2.    Payment may be made by check or wire transfer.  Neither Abbott nor any other Released Party shall have any obligation with respect to attorneys' fees, costs or expenses beyond the amount awarded by the Court in response to the application for fees and expenses agreed to in paragraph 5.1.

5.3    The Settling Defendants, Abbott, and their insurers shall have no obligations or liability with respect to the apportionment or distribution of any attorneys' fees or expenses awarded by the Court.

5.4    No order of the Court, or modification or reversal on appeal of any order of the Court, concerning the amount or allocation of attorneys' fees or expenses shall constitute grounds for cancellation or termination of this Stipulation or prevent the Judgment from becoming Final.

5.5     Except as otherwise expressly provided in paragraphs 3.3, 5.1, 5.2, and 5.3, the Settling Parties shall bear their own attorneys' fees and costs incurred in connection with the Consolidated Derivative Actions and Settlement.

## 6.   CONDITIONS OF SETTLEMENT; EFFECT OF DISAPPROVAL; CANCELLATION OR TERMINATION

6.1     This Settlement and the consideration therefor are given by the Settling Defendants in return for, and are contingent upon, a full and complete release of all Released Claims against all Released Parties, which release no longer may be challenged by any plaintiff in any of the actions comprising the Consolidated Derivative Actions or Derivative Actions, by any Abbott shareholder, or by Abbott.

6.2     The Settling Parties, each in his, her, or its sole discretion, shall have the right to terminate the Settlement and this Stipulation by providing written notice to counsel identified in paragraph 7.16 below of his, her, or its election to do so within thirty (30) days of: (a) the Court declining to enter in any material respect the proposed Preliminary Approval Order attached hereto as Exhibit C; (b) the Court refusing to approve the Stipulation or any material part of it; (c) the Court declining to enter in any material respect the Proposed Final Order and Judgment attached hereto as Exhibit B; or (d) the date upon which the Final Order and Judgment is modified or reversed in any material respect on appeal or by writ, except that, with respect to subparagraphs (b), (c), and (d) of this paragraph, an award of attorneys' fees, inclusive of expenses and costs, that is different than the amount requested by Lead Plaintiff shall not be grounds for termination or cancellation of the Settlement.

6.3     In the event that the Settlement is not approved by the Court, or is terminated for any reason, the Settling Parties shall be restored to their respective positions in the Consolidated Derivative Actions immediately prior to the signing of this Stipulation, and all negotiations,

proceedings, documents prepared, and statements made in connection with the Settlement shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by any Settling Party of any act, matter or proposition, and shall not be used in any manner or admissible for any purpose in any of the Consolidated Derivative Actions or in any other action or proceeding.

6.4     In the event that the Settlement is not approved by the Court, or is terminated for any reason, the terms and provisions of this Stipulation shall have no further force and effect with respect to the Settling Parties, and shall not be used or admitted in any of the Consolidated Derivative Actions or in any other action or proceeding for any purpose, and any judgments or orders entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated.

## 7.  MISCELLANEOUS PROVISIONS

7.1     The Settling Parties: (a) acknowledge that it is their intent to consummate the terms and conditions of this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation, to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation, and to obtain preliminary and final approval of the Settlement.

7.2     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes among themselves with respect to the Consolidated Derivative Actions. The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim, demand, or defense.  While the Settling Defendants deny that the claims and contentions advanced in the Consolidated Derivative Actions are meritorious, the Settling Defendants agree that the Consolidated Derivative Actions were filed in

17

good faith and are being settled voluntarily after negotiating at arm's-length and in good faith after consultation with competent legal counsel. The Settling Parties agree not to assert in any forum that the Consolidated Derivative Actions were brought, commenced, or prosecuted by Lead Plaintiff or defended by the Settling Defendants in bad faith. The Settling Parties shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Consolidated Derivative Actions.

7.3     The Settling Parties agree that the terms of this Settlement, including the amount of attorneys' fees and expenses, were negotiated at arm's-length and in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

7.4     This Stipulation and its Exhibits constitute the entire agreement among the Settling Parties concerning the settlement of the Consolidated Derivative Actions, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

7.5     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

7.6     All the agreements made and orders entered in the Consolidated Derivative Actions concerning the confidentiality of documents and information, and all agreements made by Lead Plaintiff's Counsel concerning the confidentiality of documents and information shall survive this Stipulation and Settlement. Within thirty (30) days after payment of any attorney's fees and expenses awarded by the Court pursuant to or as a result of this Stipulation, Lead Plaintiff's Counsel shall return to Counsel for the Settling Defendants all confidential material produced or otherwise transmitted to them in paper form or by disc, or shall represent that Lead

18

Plaintiff's Counsel have used their best efforts to destroy or delete all such materials, however transmitted. The failure of Lead Plaintiff's Counsel acting in good faith to fully comply with this provision shall not constitute a material breach of the terms of this Stipulation.

7.7     The Settling Parties agree that, other than disclosures required by law or the Court, any public comments from the Settling Parties or any of their representatives regarding this Settlement will not substantially deviate from words to the effect that the Settling Parties have reached a mutually acceptable resolution that will avoid protracted and expensive litigation, that the Settling Parties are satisfied with the resolution, and that the Settlement is in the best interests of the Company and its shareholders. None of the Settling Parties shall make any public statement regarding the terms of this Stipulation or the Settlement contained herein that is critical of or disparages the Settlement or the conduct of the Settling Parties.

7.8     This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

7.9     This Stipulation may be executed in one or more counterparts, including by facsimile and/or electronically scanned counterparts. All executed counterparts, facsimile and/or electronically scanned counterparts, shall be deemed to be one and the same instrument.

7.10     This Stipulation shall be binding upon, and inure to the benefit of, the Settling Parties and their respective successors, assigns, heirs, spouses, marital communities, executors, administrators, and legal representatives.

7.11     This Stipulation shall not be construed more strictly against any Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that this Stipulation is the result of

arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

7.12    All Persons executing this Stipulation and any of the Exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

7.13    The waiver by any party of any breach of this Stipulation shall not be deemed or construed as a waiver of any other breach, whether prior or subsequent to, or contemporaneous with, the execution of this Stipulation.

7.14    Without affecting the finality of the Judgment entered in accordance with this Stipulation, the Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

7.15    The rights and obligations of the Settling Parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to any state's choice-of-law principles, except to the extent that federal law requires that federal law governs.

7.16    Any notice required by this Stipulation shall be submitted in writing and delivered by overnight mail, electronic mail, facsimile, or in person as follows:

> Robert M. Roseman, Esq.
> Spector Roseman Kodroff & Willis, PC
> 1818 Market Street, Suite 2500
> Philadelphia, PA 19103
> rroseman@srkw-law.com
> Tel.: 215.496.0300

Fax: 215.496.6611

Counsel for Lead Plaintiff

Sallie G. Smylie, Esq.
Kirkland & Ellis, LLP
300 North LaSalle
Chicago, IL 60601
sallie.smylie@kirkland.com
Tel.: 312.862.2421
Fax: 312.862.2200

Counsel for Abbott Laboratories

Daniel E. Reidy, Esq.
Jones Day
77 West Wacker Drive
Chicago, IL 60601
dereidy@jonesday.com
Tel.: 312.269.4140
Fax: 312.782.8585

Counsel for Individual Defendants


IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed, by their duly authorized attorneys.

Dated: March 6, 2014

Robert M. Roseman
Spector Roseman Kodroff & Willis, PC
1818 Market Street, Suite 2500
Philadelphia, PA 19103
rroseman@srkw-law.com
Phone: 215.496.0300
Fax: 215.496.6611

Counsel for Lead Plaintiff

Sallie G. Smylie
Kirkland & Ellis, LLP
300 North LaSalle
Chicago, IL 60601
sallie.smylie@kirkland.com
Tel.: 312.862.2421
Fax: 312.862.2200

Counsel for Abbott Laboratories

Brian J. Murray
Jones Day
77 West Wacker Drive
Chicago, IL 60601
dereidy@jonesday.com
Tel.: 312.269.4140
Fax: 312.782.8585

Counsel for Individual Defendants

22